### JAMES ODLIN & al. vs. CHARLES STETSON & al.

Where a note is left by an indorsee with a counsellor and attorney at law for collection, before it falls due, without any instructions to present it for payment to the maker, living thirty miles from the attorney, or to notify the indorser, living at the distance of seventy-five miles, without notice to the attorney of the ability or inability to pay of either party, of which the attorney was ignorant, and without advancing any money, and where there is no proof of any special undertaking of the attorney, or particular custom of the place; it is not the duty of the attorney to present the note to the maker for payment and to notify the indorser, in order to charge him, and therefore the attorney is not liable to the indorsee for omitting so to do.

THE case came before the Court upon a statement of facts. It was a special action on the case against *Charles Stetson* and *Daniel T. Jewett,* as counsellors and attorneys at law for their neglect to charge the indorser of a promissory note, left with them for collection by the plaintiffs before it fell due. There was also a special count for the neglect of the defendants as agents of the plaintiffs in omitting to take the necessary measures to hold the indorser of the note. The note was given by one *Johnson* to one *Blish,* and indorsed to the plaintiffs, and was for the sum of $32, and became payable *January* 1, 1836. Neither the date of the note, nor the time when it was left with the defendants for collection, nor the date of the writ, appears in the papers furnished in the case. The plaintiffs, one of whom was often in this State, lived at *Exeter,* in the State of *New-Hampshire;* the defendants were counsellors and attorneys at law, but were not notaries, and resided at *Bangor,* in the county of *Penobscot; Johnson,* the promisor,

resided at *Corinna*, in the county of *Penobscot*, thirty miles from *Bangor*; and *Blish*, the indorser, resided at *Pittston*, in the county of *Kennebec*, seventy-five miles from *Bangor*. When the note became payable, the defendants commenced an action against the promisor, recovered judgment, and he was arrested on the execution, and was discharged by taking the poor debtor's oath. No demand of payment was made on the promisor, when the note fell due, unless by bringing the suit, and no notice was given to the indorser. The plaintiffs never gave any special instructions to the defendants to demand payment of the promisor, or upon his neglect to pay, to notify the indorser; and the defendants never made any special undertaking so to do, unless it results from their duty as counsellors and attorneys at law. One or both of the defendants knew of the respective places of residence of *Johnson* and *Blish*, but neither of the defendants had any knowledge of the standing as to property of either promiser or indorser. When the note became payable and since, *Blish*, the indorser, had the reputation of being possessed of property. Since the commencement of the suit against *Johnson*, the plaintiffs have called on *Blish* for payment of the note, who refused to pay, denying his liability because he was not notified. The defendants called on the plaintiffs for payment of the costs of the suit against *Johnson*, $7,60, and the officer's fees for committing him, $2,46, and the same were paid. If in the opinion of the Court the defendants were liable, they were to have a deduction of the amount of the expenses of making demand on *Johnson* and giving notice to *Blish*, if the Court should consider them entitled to be paid therefor.

The arguments were in writing.

*Potter*, for the plaintiffs, contended, that it was a general and sound principle of law, that if through carelessness or want of proper diligence and inquiry, a debt be lost by the inattention of the attorney or agent in omitting to collect it, when in the exercise of proper care and diligence it might have been secured, he will be liable for it. So an attorney who receives a note or other evidence of a debt for collection is undoubtedly liable for the debt, if it be lost by his negligence. *Greely* v. *Bartlett*, 1 *Greenl.* 179; *Huntington* v. *Rumrill*, 3 *Day*, 396. An attorney by presenting

himself to the community as such impliedly engages and promises to those who employ him, that he will faithfully and carefully transact the business which may be entrusted to him, and when this engagement is disregarded and promise violated by his unfaithfulness, he must respond in damages. *Stimpson* v. *Sprague,* 6 *Greenl.* 473; *Cooper,* 480; *Arch. Pl. & Ev.* 23, 24; *Dearborn* v. *Dearborn,* 15 *Mass. R.* 316; 2 *Wilson,* 325. It was the duty of the defendants without any express direction to take every step in the matter of collection which was apparently for the interest of the plaintiffs. *Crooker* v. *Hutchinson,* 1 *Vermont R.* 77; *Brackett* v. *Norton,* 5 *Conn. R.* 519; *Paley on Agency,* 4, 5; *Paley's Moral Philosophy,* 114; 1 *Dane,* 424, § 13. Should it be contended on the part of the defendants that they were not bound to subject themselves to the expense and trouble of notifying the indorser, as no money was advanced to them for that purpose, it is answered by saying that no expense need to have been incurred, as a notice to the indorser by mail would have been sufficient. *Whitwell* v. *Johnson,* 17 *Mass. R.* 449; *Munn* v. *Baldwin,* 6 *Mass. R.* 316; *Stanton* v. *Blossom,* 14 *Mass. R.* 116.

*D. T. Jewett,* for himself and former partner, said, that they were not disposed to dispute the correctness of the law as laid down in the cases cited for the plaintiffs, but only that they are entirely inapplicable to this case. They only show that attorneys are responsible for neglect of duty, and not that the facts here show such neglect. These cases do not show that it is the duty of a counseller or attorney at law, without special instructions or special undertaking, to travel about the country and make a demand upon the maker, and give notice to the indorser of a note left with them for collection in the ordinary mode. Nor has a very diligent examination enabled them to find any such case. This case shows that the defendants were wholly ignorant in relation to the property of both maker and indorser. The plaintiffs gave no directions to make a demand of the maker of the note; advanced no money for the purpose; and gave no intimation that the maker was unable to pay. It would have cost nearly one half of this small note to have gone thirty miles back into the country and found the maker of the note, and made a demand on him for payment. It is said, that the

defendants were bound to notify the indorser, which could be done by mail. They were not bound to be at that expense, however small, as it would be entirely useless. Besides its being of no benefit to the plaintiffs, it was no part of the duty of the defendants.

If however the defendants are to be considered liable for neglect of duty, the plaintiffs are not to be in a better condition, than they would have been in, if the demand had been made and notice given. If a moderate sum be allowed for such expense, the sum to be recovered would be reduced below twenty dollars, and the plaintiffs could recover but one fourth as much costs as damages.

The opinion of the Court was by

SHEPLEY J.— When a person offers his services to the public in any business, trade, or profession, there is an implied engagement with those who employ him, that he will perform the business entrusted to him faithfully, diligently and skilfully. And if he fails to do so, he is answerable for the damages suffered by reason of such neglect. This engagement is limited however by the nature of the business, and often also by its being carried on only in a particular place. Thus an insurance or ship broker resident in a certain city would not be expected to effect insurance or obtain a freight in a distant city, unless such were proved to be his usual course of business, without a special undertaking to do it. So a notary cannot be expected to perform the duties of an attorney, or an attorney those of a notary, without some special engagement, unless there be proof of a combination of these employments or of a course of business authorizing those employing him to expect that he will do so.

The case finds, that the defendants were not notaries; and it does not appear, that they had so conducted their business as to authorize any one to expect them to act in any other character or manner than is usual for attorneys. The Court must understand from the law, and from the customary course of business as exhibited in cases coming before them, that negotiable paper is placed in the hands of a notary or special agent to have the necessary presentment made and notices given. Cases may and do occur, where an attorney acts also as a notary, and where also an attorney is called upon for advice respecting the manner of perform-

ing these duties ; and he may in such and probably in other cases undertake to have them properly done, and in such cases he will be responsible.   The defendants were established in business in *Bangor*, and they could no more be expected without any agreement to do so, to perform duties out of Court in a distant place in the same county, than a broker or tradesman having an established place of business could be.   The note having been left with them before it became payable, an inference is drawn, that they must have known, that it was the desire and expectation of the holders, that the liability of all parties to it should be preserved. There may however be notes esteemed by the holders to be so well secured by the names of the makers, that they would not desire to incur the expense of a special messenger to make a demand at a distant place for the purpose of retaining the liability of the indorser.   And others, where the remedy against the indorser is known to be of little or no importance.   As no *intimation was* given when the note was left, that the maker was not perfectly able to pay, or that the indorser was of ability, or that any thing more was desired or expected, than the usual course of suing out the writ and making efforts to secure the debt in case of neglect to pay at maturity, the defendants' were not bound to believe, that any unusual expense was to be incurred, or that an unusual course for an attorney was to be pursued.   Without any proof, that it was within the usual course of business at that place, and without any instructions to present the note to the maker and notify the indorser, or any knowledge that it was *important for the interest of* the plaintiffs that it should be done, and without funds to pay the expenses, the defendants cannot be regarded as having undertaken to make such a presentment at a place thirty miles distant from their place of business.   It is said they might have notified the indorser by addressing a notice to him through the post office ; but such a notice without a presentment would have been wholly ineffectual.

*Plaintiffs nonsuit.*