FENAILLE & DESPEAUX v. COUDERT ET AL.

1. An attorney-at-law of the State of New York, employed there to draw a contract for building on lands in New Jersey, does not, by accepting such employment, impliedly undertake that he is acquainted with the laws of this state respecting the necessity of filing of such contracts for protection against claims of workmen and material-men under the mechanics' lien law.

Fenaille v. Coudert.

2. An attorney-at-law who accepts an employment to draw such a contract does not thereby impliedly undertake to file it. In the absence of an express undertaking to file it, he will not be liable for failure so to do. *Quære*, whether, when so employed, he would be liable for failing to advise his client of the risk of not filing such a contract.

3. Even if liable for breach of duty in respect to filing such a contract, the owners, who have been required to pay a sub-contractor's claim, cannot recover of the attorney if they have discharged the builder, who is primarily liable, or have accepted satisfaction from him.

———

On rule to show cause why a new trial should not be granted.

Argued at February Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED, and MAGIE.

For the plaintiffs, *G. Collins*.

For the defendants, *J. Linn*.

The opinion of the court was delivered by

MAGIE, J. This action was in case, and the declaration alleged that plaintiffs had employed and retained defendants, as attorneys-at-law, (which it averred them in fact to be,) to prepare a contract between plaintiffs and one Barnes for the erection by the latter of certain buildings on lands of plaintiffs in the county of Hudson, and to file the contract in that county before the beginning of the work, for the purpose of protecting said lands from claims under the mechanics' lien law. It alleged further that defendants undertook to perform the duties so specified, and that they carelessly and negligently failed to file the contract, whereby plaintiffs were injured by being compelled to satisfy the claims made by a sub-contractor, upon which judgment had been obtained against Barnes as builder and plaintiffs as owners.

Among other pleas, the defendants filed the general issue and a plea setting up a release by plaintiffs to Barnes of all

Fenaille v. Coudert.

demands, including that arising out of the sub-contractor's claim.

The issues were tried without a jury, and the finding was in favor of the plaintiffs, whose damages were assessed at $100. The opinion of the court below was not furnished.

Plaintiffs obtained the rule to show cause, and the sole reason filed in support of the rule is that the damages awarded are insufficient.

The evidence showed that the sub-contractor's judgment was for a large amount, and that it had been settled by plaintiffs by the payment of $4500. The finding in favor of plaintiffs for only $100 must therefore be regarded as a determination by the court below that defendants had been guilty of the negligent omission of duty charged in the declaration, but that plaintiffs were entitled thereon to only nominal damages. Their contention now is that they ought to have been awarded damages at least to the amount expended in settlement of the judgment upon the lien claim.

Defendants have no rule to show cause, and therefore do not appear to contest the propriety of the conclusion respecting their liability. Nevertheless it is not improper to consider whether or not the finding is in that respect justified by the evidence, because if plaintiffs are not entitled to recover at all, they cannot complain of the finding.

The first question, therefore, that I shall consider, is whether defendants were under any obligation to plaintiffs to file the building contract as charged in the declaration. An undertaking to that effect might arise either from an express promise, made on sufficient consideration, or, it is insisted, it might be implied from the professional duty imposed by the employment and retainer of defendants as attorneys.

There is no sufficient evidence of any express undertaking. The defendant, who was alone engaged in this business, (the others being his partners,) declares there was no such undertaking. Plaintiffs' agent, who alone transacted the business with him, asserts that the instructions were given in these words, viz., " To write the contract himself, make up all the

clauses, all things for me in order. I have nothing to do myself, and to be sure that all things will be in good order." This was the express employment of defendants, and it seems unquestionable that in accepting it they merely undertook to prepare a proper and sufficient contract for the purpose intended. It manifestly did not include any express employment looking to the further protection of plaintiffs, and in accepting it they did not expressly undertake to perform any duties but such as they were so employed to perform.

Nor do I think that any duty was imposed on defendants in respect to filing this contract by reason of their being attorneys by profession, and employed as such. Attorneys are doubtless liable for negligent omissions to file pleadings and to take the regular steps necessary in the progress of suits in which they have been retained and in which they act for their client. But the filing of such a contract as that in question in this case is not a necessary concomitant of its existence or of its binding force. Whether it should be filed or not must depend upon circumstances. The owner may be thoroughly satisfied of the probity or responsibility of the builder. In such case he may consider it judicious not to file such a contract. By the evidence in this case it would seem that some reasons were supposed to exist why it was not judicious to file this contract. But at all events, the filing of such a contract is not necessary, and whether it should be filed or not is a question not to be determined by the attorney employed to draw it.

I have not been able to find any case imposing upon attorneys the duty of filing, recording or registering papers which they have drawn, by reason merely of their employment to draw them. When employed to securely invest money of a client, they are doubtless liable for failing to register or record the securities or to give notice of the lien acquired when necessary for the security of the investment. *Watts* v. *Porter*, 3 *El. & B.* 743 ; *Weeks on Attorneys*, § 311, and cases cited. They have been held liable, as any other person might be, on express contracts to record papers drawn by them. *Miller* v.

*Wilson*, 24 *Penna. St.* 114. But when the record or regis-
tration or notice is not necessary to effectuate the purpose of
their employment, I find no case holding them liable for
failure. Even when a note has been put into the hands of
an attorney for collection, it has been held that he was not
liable for a failure to present it for payment, and to notify
the endorser of non-payment, except upon a special and per-
sonal undertaking to that effect. *Odlin* v. *Stetson*, 17 *Maine*
244. This case goes, perhaps, too far; at least farther than
is necessary to support the conclusion I have arrived at in
this case, which is, that no implied undertaking to file a paper
exists on the part of an attorney merely from his having been
employed to draw it. If the employment is so broad as to
include the filing as a necessary or proper part of his duty,
then he is liable for a failure to perform such duty.

In the case of *Stannard* v. *Ullithorne*, 10 *Bing.* 491, an
attorney employed by a vendor to settle the assignment of a
term, was held to be liable to the vendor for not having ex-
plained to him the liability he incurred by reason of a cove-
nant of an unusual character contained in the assignment. C.
J. Tindal put the liability upon the ground that the attorney,
by reason of his employment, undertook and was bound to
take care that his client did not enter into any covenant which
would expose him to a greater degree of responsibility than
is ordinarily attached to the business in hand, or, at all events,
that he does not do so until the consequences have been ex-
plained to him. It may be doubted whether this principle is
properly applicable to the case in hand. The liability arising
from a failure to file the contract is not of unusual character.
It is created by positive law, of which every one is supposed
to have knowledge. But if such an obligation is imposed on
an attorney in a case like the present, it is sufficient to say
that such is not the negligence charged in the declaration. If
it had been charged, the defendants are not, as we shall here-
after see, attorneys in such a sense as to be liable therefor.

The claim that defendants, by retaining the contract after
execution, impliedly undertook to file it, is disposed of by

what I have already said. Such an obligation would not be implied in any event, unless the filing was necessary. It added nothing to the validity or force of the contract. Whether it was necessary or judicious, was not to be determined by the attorney. Besides, the weight of evidence is that the contract was delivered to plaintiffs' agent and retained by him until after the proper time for filing had passed.

I have considered the question thus far without adverting to the fact that defendants are not attorneys of this state. They are, in fact, attorneys in the State of New York, and were there employed by plaintiffs' agent. In assuming the employment of plaintiffs, the skill and knowledge they professed, must be considered with reference to the locality of their practice. In the absence of any express declaration on the subject, they will be presumed to have held themselves out as possessing such skill and knowledge as attorneys practicing there might reasonably be supposed to possess, and no more. As attorneys of New York, they are not to be presumed to know the laws of a foreign state. Nor did they impliedly undertake that they had such knowledge, by accepting an employment which, as we have seen, was, in terms, limited to drawing a contract in all respects binding between the parties. It could hardly be contended that the attorney who is employed to draw an agreement affecting one of our immense railways, traversing a dozen states and territories, impliedly holds himself out as familiar with the laws of each. In such a case the prudent client submits the contract to professional gentlemen of each state.

And so if there devolved upon an attorney employed to draw a building contract, an obligation to advise his client of the risk arising upon a failure to file it, it is manifest such an obligation would not affect defendants. It must arise, if at all, out of the implied undertaking that the attorney knows the law affecting such a contract. It cannot exist where the attorney does not profess to know that law. In this case there is nothing to show that defendants professed to be at all acquainted with our laws, and they will not be presumed to

.have professed such knowledge merely because they were attorneys-at-law in·New York.

There is another ground upon which it is equally clear that plaintiffs have no reason to complain of the finding below.

While the claim of the sub-contractor was pending, plaintiffs and Barnes executed a sealed instrument. Barnes thereby agreed on his part to release plaintiffs from all liability then incurred by them to him upon the building contract, and also to do certain work specified in a memorandum annexed for a certain sum. He further agreed to pay the counsel fees to be expended by plaintiffs in the sub-contractor's suit if he failed to recover. Plaintiffs, on their part, agreed to pay the sub-contractor's judgment in case he recovered one; and further agreed that in that case they should "have no claim or recourse against Barnes therefor." Barnes simultaneously executed to them a full release of all claims, particularly such as had arisen upon the building contract.

The result of this arrangement can be at once perceived. Barnes was the original debtor to the sub-contractor. If the latter compelled plaintiffs to pay his claim, their recourse was to Barnes, who would be liable to reimburse them. And if defendants' negligence rendered them also liable, they, upon settling the claim, would have been entitled, by subrogation, to plaintiffs' rights against Barnes, the person primarily liable. But, by the agreement, plaintiffs discharged the liability of Barnes to them and so deprived defendants of any relief by subrogation.

Barnes also testifies that the release given by him to plaintiffs discharged them of large claims upon the contract and for extra work. Although this is disputed, the weight of the evidence is in favor of Barnes' statement.

Under such circumstances, plaintiffs ought not to recover from defendants, even if liable for negligence, what they have paid on the sub-contractor's claim. Plaintiffs have voluntarily relinquished their right thereto by discharging Barnes, from whom defendants otherwise might have claimed reimbursement. They have, in fact, received compensation from

Barnes for what they they have had to pay through the release.

That such effect must be accorded to the agreement, if defendants are entitled to appeal to it, was not seriously disputed on the argument. Plaintiffs' contention is that this agreement cannot be set up by defendants. Of the reasons urged, only one seems to need consideration. It is that the agreement in question was executed under the advice and by the procurement of defendants. It is claimed that it would be a fraudulent abuse of the relation of client and attorney to permit the latter to reap an advantage from an agreement drawn by his direction and advice.

It is a sufficient answer to this claim to say that the proof is very clear that the substance of this agreement was determined on and arranged between plaintiffs' agent and Barnes, without advice or direction from defendants. They merely put the agreement in legal form to effectuate the intention of the parties previously arrived at. In so doing the attorney was not bargaining with his client. The client was dealing with a third party. If the attorney advised this agreement I do not perceive any element of bad faith in it. The effect of the agreement was, on the contrary, of benefit to plaintiffs if Barnes' claims were, as he insists, valid against them. By the terms of the agreement, if plaintiffs defeated the sub-contractor they were largely the gainers by having settled Barnes' claim without any payment whatever. If the sub-contractor succeeded, they paid him out of money that Barnes claimed, which claim they seemed to admit, by the agreement, could not be disputed.

Having submitted to the chances of that suit, and having paid the judgment therein out of money thus claimed by Barnes, it would be grossly unjust to permit plaintiffs to recover the payment out of the defendants.

For these reasons the rule to show cause must be discharged.