IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 6, 2006 Session


**CATHY L. CHAPMAN, ET AL. V. RICK J. BEARFIELD**


**Appeal by permission from the Court of Appeals, Eastern Section**
**Circuit Court for Washington County**
**No. 8999    Jean A. Stanley, Judge**

---

**No. E2004-02596-SC-R11-CV - Filed on November 6, 2006**

---

We accepted this appeal to clarify whether experts testifying in legal malpractice cases must be familiar with a single, statewide professional standard of care or a standard of care for a particular locality within the state. Because we hold that a single, statewide professional standard of care exists for attorneys practicing in Tennessee, expert witnesses testifying in legal malpractice cases must be familiar with the statewide professional standard. The judgment of the Court of Appeals is affirmed. We remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed; Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, GARY R. WADE, JJ., and E. RILEY ANDERSON, SP.J., joined.

Jason W. Blackburn, Johnson City, Tennessee, for the appellant, Rick J. Bearfield.

John J. Bandeian, Bristol, Tennessee, for the appellees, Cathy L. Chapman, Brandon M. Chapman, Kaylan L. Chapman, and Dana L. Chapman.


**OPINION**

**BACKGROUND**

Cathy L. Chapman and other members of the Chapman family ("the Chapmans") retained Johnson City attorney Rick J. Bearfield ("Bearfield") in 2001 to represent them in a medical malpractice action resulting from a Chapman family member's death. The Chapmans became dissatisfied with Bearfield's representation and obtained new counsel. After reviewing the case, the

Chapmans' new counsel advised them to file a legal malpractice suit against Bearfield. On July 8, 2004, in the Washington County Circuit Court, the Chapmans filed pro se the legal malpractice action against Bearfield that has generated this appeal.

Bearfield answered the Chapmans' complaint and denied numerous factual allegations. Bearfield subsequently moved for summary judgment. In support of his motion, Bearfield filed a Statement of Material Facts, see Tenn. R. Civ. P. 56.03 (2006), and his own affidavit. In the affidavit, Bearfield opined that neither he nor any attorney under his direction had committed malpractice, citing as his authority the professional standard of care applicable to attorneys "in the upper East Tennessee area."

The Chapmans responded to Bearfield's motion, submitting their own Statement of Material Facts and the affidavit of Richard L. Duncan, a Knoxville medical malpractice attorney. Duncan asserted that he was "familiar with the standard of care for attorneys in medical malpractice cases in Tennessee" and opined that Bearfield's prosecution of the Chapmans' medical malpractice claim fell below the standard of what "a reasonable attorney under similar circumstances" would have done.

The motion for summary judgment was initially scheduled for hearing on September 27, 2004, but was then rescheduled by agreement of the parties. On October 5, 2004, Bearfield filed a Reply Statement and a supporting affidavit.

On October 7, 2004, the trial court heard arguments on Bearfield's summary judgment motion. At the hearing, Bearfield advanced a two-part argument. First, Bearfield attacked the sufficiency of Duncan's affidavit because Duncan did not demonstrate a familiarity with the professional standard of care required of attorneys in upper east Tennessee. Second, he argued that the Chapmans' expert affidavit did not meet the requirements of Tennessee Rule of Civil Procedure 56.06 because it did not include the medical reports and other documents it referenced.

On October 8, 2004, the Chapmans filed a revised affidavit of Richard L. Duncan, now with the required supporting documents attached. Specific leave of the trial court had not been granted for this filing.

On October 18, 2004, the trial court granted summary judgment to Bearfield because (1) the Duncan affidavit did not meet what the judge termed "the locality rule": the affidavit did not demonstrate Duncan's familiarity with the professional standard of care required of attorneys in that part of east Tennessee, and (2) the Chapmans' failure to attach supporting documents to the Duncan affidavit made it "technically deficient."

The Chapmans appealed. The Court of Appeals vacated the grant of summary judgment. First, the intermediate appellate court could find no basis for a "locality rule" that governs the conduct of an attorney practicing law in Tennessee. Second, the court found the Duncan affidavit technically deficient but reasoned that the Chapmans should have received extra time to correct the

mistake.

We accepted this appeal to clarify whether experts testifying in legal malpractice cases must be familiar with a single statewide professional standard of care or a standard of care for a particular locality within the state. We hold that a single, statewide professional standard of care exists for attorneys practicing in Tennessee and that expert witnesses testifying in legal malpractice cases must be familiar with the statewide professional standard of care.

## DISCUSSION

### Standard of Review

We review a trial court's grant of summary judgment de novo. See Blair v. W. Town Mall, 130 S.W.3d 761, 763 (Tenn. 2004). In accordance with Tennessee Rule of Civil Procedure 56.04, a grant of summary judgment is appropriate only when (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and (2) based on the undisputed facts, the moving party is entitled to a judgment as a matter of law. Id. at 764.

### A Statewide Professional Standard of Care for Tennessee Attorneys

In Spalding v. Davis, 674 S.W.2d 710 (Tenn. 1984), the Court noted that "[t]he settled general rule in most if not all [United States] jurisdictions is that an attorney . . . may be held liable to his client for damages resulting from his failure to exercise [the] ordinary care, skill, and diligence . . . which is commonly possessed and exercised by attorneys in practice in the *jurisdiction*." Id. at 714 (emphasis added).[1] Twice since 1984, in Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400, 405-06 (Tenn. 1991), and in Sanjines v. Ortwein & Assocs., 984 S.W.2d 907, 910 (Tenn. 1998), we repeated with approval, though without further elaboration or analysis, the Spalding formulation. However, none of these cases presented a good opportunity to define the term "jurisdiction."

Since 1984, various panels of the Court of Appeals have been inconsistent in defining the "jurisdiction" referenced in Spalding. On the one hand, two reported opinions of the Court of Appeals have linked the legal malpractice standard of care with the medical malpractice standard, which is governed by a statutory locality rule.[2] See Underwood v. Waterslides of Mid-Am., Inc., 823

---

[1] In Meadows v. State, 849 S.W.2d 748, 752 (1993), we overruled Spalding on grounds unrelated to the issue in this case.

[2] In unpublished opinions, three other Court of Appeals panels have interpreted "jurisdiction," either explicitly or implicitly, to mean a political subdivision of the state. See Logan v. Winstead, No. 03A01-9902-CV-00057, 1999 WL 538208, at *2 (Tenn. Ct. App. July 14, 1999) (crediting a defendant attorney's service as a district attorney general in the Third Judicial District and as an attorney in the county in which the case was heard as evidence of his awareness of the standard of care in his "jurisdiction"); Davis v. Simpson, No. 1295, 1990 WL 16893, at *2 (Tenn. Ct. App. Feb.

S.W.2d 171, 183 (Tenn. Ct. App. 1991) (finding that a professional's familiarity with "the local standard of care is the exception rather than the rule," with the principal exceptions being law and medicine); Cleckner v. Dale, 719 S.W.2d 535, 539 (Tenn. Ct. App. 1986) ("a lawyer's standard of care does not differ markedly from that of physicians or other professionals") (internal quotation marks and citations omitted). On the other hand, one intermediate appellate court panel understood "jurisdiction" to mean "Tennessee." See Wood v. Parker, 901 S.W.2d 374, 379 (Tenn. Ct. App. 1995) ("[w]e find nothing . . . to show that defendant . . . deviated from the accepted standard of care for attorneys in *Tennessee*") (emphasis added). In this case, the Court of Appeals, in its opinion below, also adopted a statewide professional standard of care.

We agree with the instant decision of the Court of Appeals. A "jurisdiction" is "[a] geographic area within which political or judicial authority may be exercised." Black's Law Dictionary 855 (7th ed. 1999); see also Webster's Third New International Dictionary 1227 (1993) (defining jurisdiction as "the limits or territory within which any particular power may be exercised"). This Court allows an attorney with a Tennessee law license to practice anywhere in the state. See Tenn. R. Sup. Ct. 7 § 1.05 (2006) ("All persons admitted to the bar of Tennessee are . . . (i) officers of the courts of Tennessee, eligible for admission to practice in any court in this State . . . and (ii) subject to the duties and standards imposed from time to time on attorneys in this State."). An attorney practicing in Tennessee, then, must exercise the ordinary care, skill, and diligence commonly possessed and practiced by attorneys *throughout the state*. Indeed, while there may be local *rules of practice* within the various judicial districts of our State, there are no local *standards of care*. There is only one standard of care for attorneys practicing in Tennessee: a statewide standard. By extension, an expert who opines in a legal malpractice case about an attorney's adherence to our professional standard of care must be familiar with the statewide professional standard of care.

Bearfield argues that the medical malpractice locality rule should be extended to legal malpractice actions. However, the locality rule for medical malpractice is a creature of statute. See Tenn. Code Ann. § 29-26-115(a)(1) (Supp. 2005) (standard of care relates to "the community in which the defendant practices or in a similar community"). Neither this Court nor the legislature has created a similar standard for the legal profession, and we decline to create one here.

We also believe the adoption of a statewide professional standard of care for attorneys who practice law in Tennessee is good policy. Three concerns motivate our conclusion. First, if a local professional standard of care prevailed, plaintiffs might have difficulty proving their legal malpractice cases because local attorneys might not be willing to speak against their colleagues. See 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 19.5 (5th ed. 2000). Second, local variations in the standard of care could create an inefficient and inequitable morass of professional

27, 1990) (noting that a defendant attorney's "qualifications and experience in domestic litigation in Knox County" helped inform his awareness of the professional standard of care); Anthony v. Felknor & Cunningham, No. 146, 1988 Tenn. App. LEXIS 601, at *8-9 (Tenn. Ct. App. Sept. 30, 1988) (holding, without analysis, that Spalding meant "an attorney has the duty to use the care and skill ordinarily used by attorneys in the same or similar locality under similar circumstances").

standards of care, reducing the likelihood that some attorneys would face malpractice claims while increasing the likelihood for others. See id. Finally, the emergence of the internet as a primary tool for legal research undercuts historical transportation and communications arguments favoring local variations in the standard of care. See Russo v. Griffin, 510 A.2d 436, 438 (Vt. 1986). We join those states which have accepted these and other rationales for maintaining a statewide standard of professional care for their attorneys. See, e.g., Brett v. Berkowitz, 706 A.2d 509, 517 (Del. Super. Ct. 1998); Kellos v. Sawilowsky, 325 S.E.2d 757, 758 (Ga. 1985); Fenaille v. Coudert, 44 N.J.L. 286, 289 (N.J. 1882); Little v. Matthewson, 442 S.E.2d 567, 570 (N.C. Ct. App. 1994), aff'd 455 S.E.2d 160 (N.C. 1995); Feil v. Wishek, 193 N.W.2d 218, 225 (N.D. 1971); Smith v. Haynsworth, Marion, McKay & Geurard, 472 S.E.2d 612, 614 (S.C. 1954); Russo v. Griffin, 510 A.2d 436, 438 (Vt. 1986); Cook, Flanagan & Berst v. Clausing, 438 P.2d 865, 866 (Wash. 1975); Moore v. Lubnau, 855 P.2d 1245, 1250 (Wyo. 1993).

Because there is a statewide professional standard of care for attorneys practicing in Tennessee, the Court of Appeals correctly overturned the trial court's award of summary judgment to Bearfield. The Chapmans' expert affiant did not need to assert knowledge of any practice standards peculiar to the "upper East Tennessee area." To the contrary, he correctly asserted his knowledge of the professional standard of care for attorneys practicing in Tennessee. Instead, it was Bearfield's original affidavit which relied upon the erroneous professional standard of care.

Because we hold that the trial court used an incorrect standard of review in considering Bearfield's motion for summary judgment, we agree with the Court of Appeals that the grant of summary judgment was error and that this case must be remanded to the trial court. It is therefore unnecessary to determine whether, even if Bearfield's affidavit is subjected to the correct standard of review, it is otherwise sufficient to shift the burden to the Chapmans to demonstrate genuine issues of material fact in controversy.[3] At this stage, it is also unnecessary for us to determine the adequacy of any pleadings or affidavits submitted subsequent to the original affidavit.

---

[3]In their complaint, the Chapmans pleaded specific facts to support their contention that Bearfield committed malpractice, including his filing of an incorrect pleading that vitiated their medical malpractice claim, his failure to consult with the proper experts, and his delegation of too much responsibility to an inexperienced attorney. In Bearfield's Answer, he denies these factual allegations, placing those points in controversy. In his summary judgment motion, Bearfield left those specific factual matters in contention. In both his Statement of Material Facts and his self-prepared expert affidavit, Bearfield asserts that "[a]t all times relevant thereto, Bearfield and the attorneys under his direction acted within the standard of care required of attorneys in the upper East Tennessee area" and that "[n]either Bearfield nor the attorneys under his direction committed any act or made any omission that was below or deviated from the standard of care in the upper East Tennessee area." These conclusory statements of mixed law and fact alone may not remove from controversy the specific facts that he denied in his Answer.

-5-

**CONCLUSION**

A single, statewide professional standard of care exists for attorneys practicing law in Tennessee. Therefore, experts testifying in legal malpractice cases in Tennessee must be familiar with the professional standard of care for the entire state. We affirm the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellant, Rick J. Bearfield, for which execution may issue, if necessary.

_____
CORNELIA A. CLARK, JUSTICE