Neal Smith CURTIS, Appellant,

v.

T. H. CAMPBELL et al., Appellees.

Court of Appeals of Kentucky.

June 10, 1960.

Earle M. Nichols, Nichols & Nichols, Madisonville, R. L., Maddox, Middlesboro, for appellant.

Henry L. Bryant, Pineville, Edward M. Dooley, Middlesboro, for appellees.

CLAY, Commissioner.

This suit was brought by three business partners against the executrix and heirs of a deceased partner to have the rights of the parties declared in the settlement of partnership interests. Since the controversy arose prior to 1954, the Uniform Partnership Act (KRS 362.150—362.360) is not applicable. The Chancellor decided all questions favorably to plaintiff appellees.

■ Upon appellees' motion to dismiss the appeal as to certain parties not named in the notice of appeal (CR 73.03), we have heretofore entered an order (dated October 21, 1958) limiting this appeal to appellant Neal Smith Curtis in her individual capacity. In the court below she was made a defendant both as executrix of the will of the deceased partner, Jennie Campbell, and as beneficiary thereunder. On reconsideration of our former order we have decided to modify it to the extent of recognizing that appellant is properly before this court on appeal both in her individual and her representative capacities. Even as an individual, being a beneficiary of Jennie Campbell's estate, she has such a direct interest therein that she may appeal from the judgment adverse to the personal representative. Miller v. Miller, Ky., 335 S.W. 2d 884.

In 1900 the mercantile business of "T. H. Campbell & Bros." was established. It was operated as a partnership until incorporated in 1933. In 1934 one of the original partners died and his widow Jennie Campbell succeeded to his interest in the corporation. As of January 1, 1945, the corporation was dissolved and a new partnership was formed among the three appellees (all of whom are Campbells) and Jennie Campbell. Each had a one-fourth interest in the partnership, although the latter took no active part in its affairs. (The other partners drew substantial salaries as compensation for their personal services.)

In 1952 Jennie Campbell died and since that time the three appellees have continued

to operate this business. The settlement of the partnership accounts has been delayed for many reasons, one of which was a controversy over whether or not a certain valuable tract of real estate was a part of the partnership assets. We shall dispose of that question now.

At the time of the formation of the partnership (January 1, 1945) the four partners, T. H., Alva, George and Jennie Campbell, owned jointly two pieces of real estate. One was the place where the business was carried on and the other was known as the "Montgomery Ward" lot. The "Articles of Co-partnership" provided that the parties' interests in these two tracts were contributed, along with other assets, to the partnership. This instrument provided also that one of the purposes of the partnership was "renting the real property." From January 1, 1945, until the partner's death in 1952, funds of the partnership were expended for improvements thereon, rents were included in partnership income, and this property was in all respects treated as partnership property.

Appellant takes the position that real estate owned by partners, even though purchased with partnership funds or used in the partnership business, retains its character as real estate and cannot be treated as personal assets of a partnership upon dissolution, citing Davidson v. Richmond, 69 S.W. 794, 24 Ky.Law Rep. 699, and Strode v. Kramer, 293 Ky. 354, 169 S.W.2d 29. These cases simply recognize that such property is real estate for the purpose of transferring title, which is not the problem we have here. Our question is whether or not the realty should be considered a partnership asset in the settlement of one partner's interest.

■ Whether real estate owned by a partner (or partners) acquires the attributes of partnership property is a matter of the intention of the parties. Sanderfur v. Ganter, Ky., 259 S.W.2d 15, 37 A.L.R. 2d 1073; 40 Am.Jur., Partnership, section 105 (page 201). The parties may by express agreement designate real estate owned by them as partnership property. See Annotation in 45 A.L.R.2d 1009, 1013. Clearly the partners in this case intended the realty to be partnership property and retain its character as such an asset in the event the business was to be continued by the surviving partners after one of them died. The Chancellor correctly found that the Montgomery Ward lot, by virtue of the original agreement and the subsequent conduct of the parties, should be treated as partnership property in settling the deceased partner's interest.

The next contention is that the provisions of the contract with respect to the purchase of a deceased partner's interest are unconscionable and should not be enforced. We find nothing in the agreement which is oppressive if its terms are fairly carried out. We might possibly agree with appellant's position if the contract could be performed by appellees in the manner in which they undertook to do it. This brings us to the heart of the matter.

The pertinent provisions of the partnership agreement are as follows:

"IX. *At the time of the dissolution of this partnership* regardless of how such dissolution is effected, there shall be prepared *a true and final account* of all partnership transactions, showing *the true and correct financial condition of this partnership as of that date.* A true and correct copy of *this financial statement* shall be given to each of the partners, or if the dissolution is caused by the death of one of the partners, then the executor, administrator or personal representative of the deceased partner shall receive a copy of the aforesaid financial statement.

"Each of the partners for their heirs, executors, administrators or personal representatives agree that in the event of dissolution of this partnership from any cause whatsoever, that if any one or more of the partners wish to continue that partnership business, that

the partner wishing to withdraw and dissolve the partnership, or the executor, administrator *or personal representative of the deceased partner shall first offer* the interest of the partner wishing to withdraw, or *the personal representative of the deceased partner, shall offer such interest* to any one or more of the partners who may wish to buy, and the partners wishing to continue the business or the surviving partners shall have *the unqualified first right to purchase such interest.*

"The purchase price of said partnership interest shall be based upon the *value of the partners' interest as shown upon the last financial statement,* plus the proportional part of the earnings accrued since the preparation of the balance sheet and *including a fair allowance for good will,* to be determined by the parties at the time any such sale and purchase is effected." (Emphasis added.)

■ These provisions are rather awkwardly drawn and are in some respects ambiguous. The wording of the second paragraph of Article IX above quoted gives rise to appellant's contention that until she first offered to sell the interest of Jennie Campbell appellees could not terminate the estate's rights in the partnership. In spite of the somewhat reverse wording of this paragraph, since the partnership was automatically dissolved at the death of Jennie Campbell and since the personal representative had no authority to participate as a partner, this provision of the agreement must be construed as giving the surviving partners an absolute option to buy the deceased partner's interest and continue the business. They have properly and timely exercised the option.

The real nub of this controversy is the basis upon which the value of the deceased partner's interest shall be fixed. The first paragraph of Article IX provides the "true and final account" shall be based upon "the true and correct financial condition" of the

partnership at the date of Jennie Campbell's death. In view of the purpose for which this accounting is required, clearly it was intended to reflect *the fair value of the business property.*

■ The last paragraph of Article IX is confusing. It recites "the purchase price of said partnership interest shall be based upon the value of the partner's interest as shown upon the last financial statement" (plus accrued earnings and an allowance for good will). This seems to assume that the partnership agreement provided for periodical financial statements which *would show the value of each partner's interest.* It did not do so. Article VII had provided for a biannual "financial statement of operations," but even this periodical accounting had been discontinued. It may be that whoever drafted this instrument anticipated that the value of each partner's interest would be shown on the books of the partnership, which could be a proper basis of settlement. However, the language used wholly failed to accomplish this purpose and the books did not fairly show the value of any partner's interest. (For the type of partnership agreement which does provide for current evaluation of each partner's interest on the books of the partnership, see Barrett & Seago, Partners and Partnerships (1956), Vol. 2, Appendix 8, page 593.) If there was any doubt concerning the proper method of determining the value of Jennie Campbell's interest, it should be resolved in her favor.

■ We must bear in mind that partners are obligated to deal with each other in utmost good faith and fairness. This is particularly true when one partner seeks to purchase the interest of another partner. Barrett & Seago, Partners and Partnerships, Vol. 1, Chapter 6, Section 1.1; Stephens v. Stephens, 298 Ky. 638, 183 S.W. 2d 822, 824; Van Hooser v. Keenon, Ky., 271 S.W.2d 270. We must assume that this partnership agreement contemplated fair dealing between the parties in the event of dissolution. If there is an am-

biguity in the agreement, it should be construed in favor of the estate of the deceased partner. Baker v. Wides' Ex'r, 299 Ky. 414, 185 S.W.2d 699. It will also be construed against the party who prepared the instrument, who in this case was one of the surviving partners. Fidelity & Deposit Co. of Maryland v. Lyon, 276 Ky. 411, 124 S.W.2d 74; B. Perini & Sons, Inc. v. Southern Ry. Co., Ky., 239 S.W.2d 964. In a controversy between a deceased partner's estate and the surviving partner concerning the valuation of the deceased partner's interest, if the partnership agreement is susceptible of two constructions, the court will not adopt the oppressive one. Lockwood's Trustee v. Lockwood, 250 Ky. 262, 62 S.W.2d 1053. Clearly this settlement provision must be construed to accomplish a just result.

Appellees, the surviving partners, made no attempt to determine the fair value of Jennie Campbell's interest in this partnership. No witness for appellees testified that the amount they offered for the purchase of her interest represented the fair value of that interest. Nor did the Chancellor make such a finding.

As of the day after her death the accountant for the partnership, who is also appellees' counsel in this litigation, prepared a "Balance Sheet" which he made up from the books and the records of the partnership. This gave a "book value" of the partnership business, which is not generally regarded as being fair value. Barrett & Seago, Partners and Partnerships, Vol. 2, Appendix 9(b), page 610. That the two are quite disparate is evidenced in this case by some of the computations shown on the "Balance Sheet."

This financial statement lists the real property at a value of approximately $134,000, which is slightly more than its valuation shown on the original balance sheet of January 1, 1945. The books of the company disclose that this valuation is an arbitrary figure based upon cost computations which do not represent either actual cost or present value. At least two of appellant's witnesses estimated the fair market value of this real property substantially in excess of the figure shown on the "Balance Sheet."

For the purposes for which this financial statement should have been prepared, the next item seems wholly illusory. The "Balance Sheet" shows that there has been deducted from the book value of the fixed assets (principally the real estate) an item of $56,000 for "Reserve for depreciation." This reduces the book value of those assets to approximately $86,000. There was evidence the real estate alone had a market value in excess of $150,000.

For certain purposes, such as the preparation of income tax returns, the accounting method shown on the "Balance Sheet" may have been perfectly proper. However, we cannot understand how this item of depreciation may be used to reduce the value of any partner's interest. The figure is not set up as a credit on the books and it does not represent a decrease in the value of the property. This rather arbitrary deduction substantially distorts the true financial condition of the business insofar as the fair value of each partner's interest is concerned.

There are other questioned items on the "Balance Sheet" which we do not believe it necessary to discuss. It is evident, however, that the figures upon which appellees proposed to settle the deceased partner's interest do not reflect the "true and correct financial condition" of the partnership as of the date of Jennie Campbell's death. Appellees have assumed throughout that the value of such interest has been continuously shown on the books of the company, which was not provided for in the partnership agreement and does not conform to the facts. We are therefore of the opinion the Chancellor erred in accepting the "Balance Sheet" as conclusive of the value of Jennie Campbell's interest.

The next important item involved in this controversy is the good will of the busi-

ness. The partnership agreement specifically provides for "a fair allowance for good will." Since this provision of the contract is qualified by the words "to be determined by the parties at the time any such sale and purchase is effected," appellees have taken the position that they have the sole authority to determine whether or not to allow anything on this item. (Here again we find ambiguity, but it must be resolved in favor of fair dealing.) In addition, their accountant and counsel testified that no value could be placed upon the good will of this partnership.

■ On the face of it, it seems rather unusual that this highly successful business enterprise should have no good will value whatsoever. As a matter of fact, the surviving partners admitted that the business had some good will, but insist that it was attributable to their participation in the business. (If the good will was a partnership asset, each partner had a right to share in it.)

We recognize that fixing the cash value of good will is a difficult problem and there are different acceptable methods of determining it. However, the partnership agreement in at least two places refers to the good will of the business and the enterprise has proven quite successful. It has shown a gross profit of $333,000 on a relatively small capitalization in its seven and one half years of existence.

The record shows that for inheritance tax purposes the estate of Jennie Campbell was assessed with an inheritance tax based upon a good will valuation of $69,000. This valuation was confirmed by two witnesses, one of whom was a disinterested reputable certified public accountant. We believe the Chancellor erred in his finding that no value could be attributed to good will.

■ The final significant question presented is whether or not the Chancellor properly disallowed any compensation for the use of Jennie Campbell's capital interest

in the partnership (being the fair value of her share in the business at the dissolution of the partnership in 1952). The estate of this deceased partner has to this date received nothing from the surviving partners. On the other hand, they have continued the business and divided the profits, part of which must be attributable to the use of the deceased partner's capital.

■ It is self-evident that equity and justice demand that one who uses money or property of another for his own benefit, particularly in a business enterprise, should at least pay interest for its use in the absence of some agreement to the contrary. 47 C.J.S. Interest § 9, page 22. This principle applies whether or not the amount owed to another is liquidated or unliquidated. Dalton v. Mullins, Ky., 293 S.W.2d 470.

■ Where money or property is wrongfully obtained, held or used, interest is allowable by way of damages. 47 C.J.S. Interest § 13, page 23; 40 Am.Jur., Partnership, Section 365 (page 386). We cannot say in this case that the surviving partners wrongfully failed to pay the estate of the deceased partner the value of the partnership share because there was a bona fide dispute with respect to the assets involved and its true financial condition. However, interest may properly be allowable on the basis of an implied contract. 30 Am.Jur., Interest, Section 6 (page 10). See Taylor v. Young, 2 Bush 428; Johnson v. Hartshorne, 52 N.Y. 173; Jurkowitz v. Jurkowitz, Pa.Com.Pl., 44 Lack.Jur. 266; and 66 A.L.R. 3, 41.

■ In a case of this sort the representative of a deceased partner may even have an election to recover interest or a share of the profits. 40 Am.Jur., Partnership, Section 391 (page 39); 80 A.L.R. 12, 75. Appellant has elected to demand interest.

■ The allowance of interest is a matter within the judicial discretion of the

court. George Pridemore & Son, Inc. v. Traylor Brothers, Inc., Ky., 311 S.W.2d 396. We think the circumstances of this case are such, particularly in view of our determination that appellees did not offer to settle the partnership accounts on the proper basis, that interest should be allowed on the amount ultimately found due. This interest shall be at the rate of six percent per annum from the date of the filing of this suit, February 4, 1953.

In our opinion the judgment must be reversed in part and further proceedings are required to determine the fair value of Jennie Campbell's interest in this partnership at the date of her death. To the extent the parties do not agree on the items of account, the Chancellor may permit the introduction of further proof.

The judgment is affirmed in part and reversed in part for further proceedings consistent with this opinion.