ROBERT A. ANDERSON AND ANOTHER,
ADMINISTRATORS OF THE ESTATE OF
FRANCES A. KEATING, v. WADENA SILO COMPANY.

246 N. W. 2d 45.

September 17, 1976—No. 46378.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, David C. Donnelly,* and *Robert R. Reinhart, Jr.,* for appellants.

*Rufer, Hefte, Pemberton, Schulze & Sorlie* and *Gerald S. Rufer,* for respondents.

Heard before Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Frances Keating (deceased) was the owner of a 50-percent interest in Wadena Silo Company. The surviving partners sought to purchase deceased's interest in the partnership, offering the administrators of the Keating estate the book value of her partnership account. The administrators rejected the offer and commenced this action for equitable accounting, or in the alternative, for dissolution of the partnership. The lower court interpreted the partnership agreement as requiring the selling price of deceased's interest to be the book value of her interest in the partnership. We reverse.

The Wadena Silo Company (company) has been engaged in the silo manufacturing business in Wadena, Minnesota, since 1920. In 1971, deceased owned a 50-percent interest in the company and Merrill Rickers and Richard Martin each owned a 25-percent interest. At that time, deceased, Rickers, and Martin entered into a partnership agreement which provided in pertinent part:

"13. Upon such withdrawal, or death of any partner, the partnership (then composed of the continuing partners) shall purchase the share of the deceased or withdrawing partner (hereinafter referred to as seller) upon the following terms:

"(a) The price shall be the seller's interest as determined by the examination of the partnership affairs by a certified public accountant.

"(b) If the date of death or date of service of notice of withdrawal (hereinafter referred to as the effective date) is prior to July 1, the prior year's examination shall be the controlling examination and if the effective date is on or after July 1, the examination of the then current year shall control."

When Frances Keating died in 1973, Rickers and Martin, pursuant to the partnership agreement, tendered to the administrators of her estate $5,000 as earnest money toward the purchase of deceased's partnership interest. Rickers and Martin offered to buy deceased's interest based on its book value of $116,245.57. The administrators rejected this offer and asserted that the selling price of deceased's interest should be its fair market value which they claimed would be about $300,000. The administrators then commenced this action seeking an accounting of the profits and interest of the partners in the company and a declaratory judgment that the plaintiffs are entitled to a purchase price equal to 50 percent of the market value of the company's assets; or for dissolution of the partnership, or for damages.

The trial court found:

"That by the terms of the partnership agreement the parties intended to and did fix a price in terms of dollar amounts remaining partners could pay for withdrawing or deceased partner's interest in the partnership business as determined by the annual examination by a certified public accountant; that the partners intended and did fix the amount to be paid therefor the amount of the partners capital account as shown by the annual examination by a certified public accountant; that the partners

did not intend by their agreement that the dollar value of deceased partners interest in the partnership should be determined by an appraisal of the market value of such deceased partner's interest in said partnership."

Based on this finding, the trial court concluded that Rickers and Martin were entitled to purchase the deceased's interest for its book value. The administrators' motion to amend the findings of fact, conclusions of law, and order for judgment and judgment was denied, and this appeal followed the entry of judgment. The only issue before this court is, what is the proper method of evaluating the deceased partner's interest in the company.

Minnesota has adopted the Uniform Partnership Act. Minn. St. 323.41 provides:

"When a partner * * * dies, and the business is continued * * * without any settlement of accounts as between * * * his estate and the person or partnership continuing the business, *unless otherwise agreed* * * * his legal representative as against such person or partnership, may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest * * *." (Italics supplied.)

Ordinarily, the estate of a deceased partner is entitled to the actual fair market value of that partner's interest unless the partners have agreed otherwise. See, Marso v. Graif, 226 Minn. 540, 33 N. W. 2d 717 (1948). Nevertheless, in the instant case, the trial court in interpreting the partnership agreement concluded that the partners had agreed to set book value, rather than fair market value, as the selling price of the deceased partner's interest.

In support of the trial court's interpretation, Rickers and Martin argue that at the time this agreement was drafted the partners had just endured extensive litigation concerning partnership termination and thus the partners wanted to fix a definite selling price. They assert that a reading of the entire part-

nership agreement clearly demonstrates that this fixed and definite selling price was to be the book value of the partner's interest. Paragraph 9 required the partners to maintain "true and correct books of account of the partnership affairs"; paragraph 10 required "an annual examination of the partnership affairs by a certified public accountant"; and paragraph 13(a) required the selling price of a deceased partner's interest to be "determined by the examination of the partnership affairs by a certified public accountant." They point out that if the partners had intended the selling price to be based on fair market value the agreement would have made some provision for an appraiser rather than referring solely to a certified public accountant.

The administrators argue that the agreement is ambiguous as to how the selling price was to be determined. They emphasize that the agreement does not specifically state that the selling price shall be the book value of a partner's interest, and that the partners in fact deleted the phrase "examination of the books" from a previous partnership agreement and substituted "examination of the partnership affairs," thereby suggesting that the parties intended the selling price to be something more than mere book value. The administrators further contend that the book value of a partner's interest is the same as that partner's capital investment, and that if the parties intended the selling price to be the book value or the capital investment, they would have expressly stated so, especially since they specifically refer to "capital investment" in other sections of the agreement. Finally, the administrators argue that a partner's "interest" in a partnership refers to that partner's percentage of ownership. Thus, according to the administrators, paragraph 13(a) merely provides that a partner's interest or percentage of ownership shall be determined by the examination by the accountant, but does not provide how the value of that interest or percentage is to be determined.

In assessing these conflicting interpretations, we note that those courts which have considered the issue of whether a part-

nership agreement establishes book value or fair market value as the selling price of a deceased partner's interest have consistently construed the partnership agreement as requiring a fair market value for the partner's interest. In Curtis v. Campbell, 336 S. W. 2d 355 (Ky. 1960), the court was confronted with a partnership agreement which provided that "the purchase price of said partnership interest shall be based upon the value of the partner's interest as shown upon the last financial statement." In interpreting this provision, the court stated (336 S. W. 2d 359):

"If there is an ambiguity in the agreement, it should be construed in favor of the estate of the deceased partner. Baker v. Wides' Ex'r, 299 Ky. 414, 185 S. W. 2d 699. It will also be construed against the party who prepared the instrument, who in this case was one of the surviving partners. Fidelity & Deposit Co. of Maryland v. Lyon, 276 Ky. 411, 124 S. W. 2d 74; B. Perini & Sons, Inc. v. Southern Ry. Co., Ky., 239 S .W. 2d 964. In a controversy between a deceased partner's estate and the surviving partner concerning the valuation of the deceased partner's interest, if the partnership agreement is susceptible of two constructions, the court will not adopt the oppressive one. Lockwood's Trustee v. Lockwood, 250 Ky. 262, 62 S. W. 2d 1053. Clearly this settlement provision must be construed to accomplish a just result."

Following these principles, the court rejected the contention that the partnership agreement set the price at "book value" which the court determined to be—

"* * * an arbitrary figure based upon cost computations which do not represent either actual cost or present value." 336 S. W. 2d 360.

Accordingly, the court concluded that "fair value" must be given for the deceased partner's interest. 336 S. W. 2d 362.

The Wisconsin Supreme Court adopted a similar approach in Schumann v. Samuels, 31 Wis. 2d 373, 142 N. W. 2d 777 (1966).

In that case, the partnership agreement specifically set the selling price of a partner's interest at "book value." Nevertheless, the Wisconsin court found the term "book value" to be "a term of ambiguous meaning" (31 Wis. 2d 376, 142 N. W. 2d 778) and thus proceeded to define "book value" as (31 Wis. 2d 377, 142 N. W. 2d 779)—

" '* * * not any arbitrary value that may be entered upon the books of the company but the value as predicated upon the market value of the assets of the company after deducting its liabilities.' *Townsend v. La Crosse Trailer Corp.* (1948), 254 Wis. 31, 36, 35 N. W. (2d) 325."

Perhaps the strongest statement against the use of book value in determining the value of a partner's interest can be found in Mahan v. Mahan, 107 Ariz. 517, 521, 489 P. 2d 1197, 1201 (1971). There the Supreme Court of Arizona stated:

"Our determination that the trial court erred in accepting book value is in accord not only with the Arizona case of Hurst v. Hurst [1 Ariz. App. 227, 401 P. 2d 232 (1965)], but with general principles of partnership accounting. The normal rule is that book value is only used in ascertaining the respective shares when there is an explicit contractual provision to that effect, and even then is not used where the facts of the case make it inequitable to do so. See 47 A. L. R. 2d 1425. Here there was no contractual provision mandating the use of book value, and even if there were, the facts show book value in this case to be so disproportionate to possible real value that it would be inequitable for it to be used anyway."

These opinions clearly demonstrate a judicial hostility to the use of book value as a measure of a partner's interest. We believe that the reason for this hostility is simply the well-recognized fact that book value does not reflect the true value of a partner's interest. Thus, it would be inequitable to require a partner to sell his interest in a partnership for a price which does not reflect

its true value unless it is clear that the partner explicitly agreed to do so.

We conclude that the partnership agreement in this case does not explicitly establish book value as the selling price of the deceased's interest in the partnership. Therefore, pursuant to Minn. St. 323.41, the administrators of Mrs. Keating's estate are entitled to have the value of the deceased's partnership interest determined by appraisal to establish the fair market value of that interest as of the date of her death. The judgment of the lower court is reversed and the matter is remanded to the lower court for further proceedings consistent with this opinion.

Reversed and remanded.