JoAnn BOHN, Personal Representative of the Estate of Clyde M. Bohn, Deceased, Plaintiff, Appellee, and Cross-Appellant,

v.

BOHN IMPLEMENT COMPANY, a Partnership, and Graydon J. Bohn, Sr., Defendants, Appellants, and Cross-Appellees.

Civ. No. 10176.

Supreme Court of North Dakota.

Oct. 25, 1982.

Lamb, Schaefer, McNair, Larson & Olson, Moorhead, Minn., and Fargo, for plaintiff, appellee, and cross-appellant; argued by Bruce H. Carlson, Moorhead, Minn.

Leland F. Hagen, of Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, and R.E.T. Smith, of Smith & Strege, Wahpeton, for defendants, appellants, and cross-appellees; argued by Mr. Hagen.

VANDE WALLE, Justice.

This is an action arising out of a disagreement over the validity and meaning of a partnership agreement entered into by two

brothers, Clyde M. Bohn and Graydon J. Bohn, Sr. The trial court determined that the agreement was ambiguous and that the section of the agreement referring to the terms of payment upon an election to purchase a deceased partner's interest was unconscionable. The trial court held that Graydon Bohn could purchase his deceased brother's interest in the partnership, but only at the fair market value. We affirm.

Clyde and Graydon were the only children of Harry and Matilda Bohn. They were born and raised in Richland County, North Dakota. In 1960 Harry and his two sons signed a partnership agreement to farm and to do business as Bohn Implement Company. In 1964 the implement dealership was closed, and Harry, Clyde, and Graydon farmed together. After Harry Bohn's death in 1968, Clyde and Graydon continued to farm as partners. Their mother, Matilda, retained a 35-percent partnership interest in the farm in trust.

Prior to Matilda's death on June 5, 1979, she made periodic gifts to Clyde and Graydon of portions of her interest in the partnership. After Matilda's death, Clyde and Graydon became sole equal partners. Their partnership received long-term financing from the Federal Land Bank and short-term financing from the Production Credit Association. In the fall of 1979 representatives of the Production Credit Association recommended to Clyde and Graydon that they should obtain more long-term financing and use it to reduce their short-term indebtedness. Before Clyde and Graydon could obtain a new loan from the Federal Land Bank they were required to produce an updated partnership agreement.

Clyde went to see attorney Mildred Johnson, of Wahpeton, North Dakota, in November 1979 for assistance with the Federal Land Bank loan and an updated partnership agreement. Mildred Johnson's associate prepared a draft of a partnership agreement which is similar to the 1960 agreement. The major difference between the two agreements is that a financial statement was attached to the 1979 agreement. The 1979 agreement referred to "Schedule A," which was supposed to be attached; however, the financial statement attached to the agreement was not so entitled.

On December 28, 1979, attorney Johnson discussed the agreement with Clyde and Graydon, and the brothers signed the agreement. Clyde died unexpectedly on April 18, 1980. After Clyde's death Graydon gave notice to Clyde's widow, JoAnn Bohn, that he elected to purchase Clyde's interest in the partnership. Graydon's net offer to JoAnn was $134,497.96. Graydon determined the amount of his offer by taking the stated value of the farmland on the balance sheet attached to the partnership agreement and dividing it in half. He assumed the total debt of the partnership, $309,320, and reduced JoAnn's share. Graydon then calculated the annual payment at six percent interest over 25 years. JoAnn rejected Graydon's net offer of $134,497.96 and commenced an action on behalf of Clyde's estate.

The case was tried without a jury. Earl Oliver, an appraiser, testified that the partnership's property had a fair market value of $1,452,410. After hearing the evidence, the trial judge concluded that the 1979 partnership agreement was ambiguous and that the portion of the agreement containing the terms of payment for the purchase of a deceased partner's interest was unconscionable. He determined that the purchase price of Clyde's interest should be 50 percent of the net fair market value of the partnership, $750,000. The trial judge also determined that the terms of Graydon's purchase would include a 15-percent cash downpayment with the remainder payable in equal annual installments over 20 years with six percent simple annual interest. Graydon has the option to elect to purchase at these terms. If he decides not to purchase, the partnership will be liquidated. Graydon appealed from the trial court's decision.

In addition to his appeal on the merits, Graydon moved that the action be remanded pursuant to Rule 35(b) of the Rules of Appellate Procedure. Rule 35(b) provides, in part:

"If, in the consideration of any appeal, it becomes apparent to the supreme court that some issue involved in the case has not been tried, or if tried has not been determined by the trial court, and that it is necessary or desirable to proper disposition of the case on appeal that the issue be determined, the supreme court may remand the case to the trial court for the determination of the issue, . . ."

Graydon contends that the trial judge did not make a specific finding of fact regarding what Clyde and Graydon actually agreed to, if anything. Graydon urges that we remand this case for a determination of this issue. The trial judge did not specifically state if he found that Clyde and Graydon had agreed to a specific buy-out price. However, he did conclude the agreement was ambiguous. Because the trial judge found an ambiguity in the partnership agreement, we assume that he found an agreement existed, but that a specific purchase price was not established.

■ In this case few, if any, facts are in dispute. It would serve no necessary purpose to remand for further findings. Although the findings of fact are not so complete as Graydon would like, we understand the rationale of the trial judge and agree with his conclusions. Even if the trial judge's reasoning were incorrect, we will not reverse the proper judgment on that basis. See *KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505, 509 (N.D.1980). We deny Graydon's motion for remand.

The central conflict in this dispute involves the validity and terms of the clauses in the partnership agreement regarding the option to buy a partner's interest upon his death. Paragraph 14 of the agreement is entitled "Death," and it states that the surviving partner has the right to purchase the deceased partner's interest or to liquidate the partnership. Paragraph 14A states that upon a surviving partner's election to purchase, the purchase price shall be as set forth in paragraph 15 and the price shall be paid according to paragraph 13A.

Paragraph 15 is entitled "Purchase Price," and it provides, in part:

"A. The value of the partnership interest of Clyde M. Bohn or Graydon J. Bohn, Sr., for the purpose of this agreement, shall be:

"a. The capital amount of the decedent's interest as shown by the books of the partnership as of the end of the last fiscal year before his death, plus

"b. the decedent's share of profits, or less the decedent's share of losses, of the partnership computed to the last day of the month in which his death occurred less all withdrawals prior thereto during such fiscal year. It is agreed that there is no value for goodwill or firm name and no such value has been included in the price arrived at hereinabove."

Paragraph 13 provides that the "purchase price shall be paid in monthly installments of not less than Two Hundred Dollars ($200.00) plus interest, the balance from time to time remaining to bear interest at the rate of six percent (6%) per annum."

■ The trial court concluded and the parties admitted the partnership agreement is ambiguous. According to paragraph 15 the value of a partner's interest for the purpose of a buy-out is "the capital amount." However, accountant Harris Widmer testified at trial that the term "capital amount" has no known definition in the accounting profession. The buy-out value cannot be ascertained from the agreement. Because of this ambiguity, we must look to other evidence to understand the agreement between Clyde and Graydon. When the intent of the parties cannot be determined from the agreement alone, the issue of the parties' intent is a question of fact. See *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417 (N.D. 1979). Our review of the trial court's determinations of fact questions is governed by the "clearly erroneous" standard of Rule 52(a) of the North Dakota Rules of Civil Procedure.

■ Graydon contends the purchase price of Clyde's interest should be based upon the figures in the financial statement attached

to the partnership agreement. Graydon relies upon *In re Randall's Estate,* 29 Wash.2d 447, 188 P.2d 71 (1947), to support his contention. In *In re Randall's Estate* the partnership agreement provided that upon the death of any partner the remaining partners could purchase the deceased partner's interest "by paying the value of such interest as determined by the last annual inventory and accounting." 29 Wash.2d at 449, 188 P.2d at 73. The Washington court noted that partnership buy-out agreements are valid in the absence of fraud and that partners may agree that the interest may be purchased for less than actual value. The court stated that merely because the deceased partner's interest is worth more than the agreed price, the agreement is not subject to attack. We agree that partnership buy-out agreements may be valid when the interest is priced at less than actual value. However, the agreement must explicitly provide the price and terms in that situation.

JoAnn argues that in the case at hand the purchase price of Clyde's partnership interest should be based upon the fair market value. JoAnn relies upon *Anderson v. Wadena Silo Co.,* 310 Minn. 288, 246 N.W.2d 45 (1976). In *Anderson* administrators of the estate of a deceased partner in Wadena Silo Company brought an action for a declaratory judgment providing that they could sell the deceased partner's interest at fair market value. The partnership agreement stated that the purchase price in this situation was "the seller's interest as determined by the examination of the partnership affairs by a certified public accountant." 310 Minn. at 290, 246 N.W.2d at 46. The general rule in Minnesota is that "the estate of a deceased partner is entitled to the actual fair market value of that partner's interest unless the partners have agreed otherwise." 310 Minn. at 291, 246 N.W.2d at 46. In *Anderson* the surviving partners urged that the partnership agreement revealed the partners had agreed the buy-out price was the book value of the deceased partner's interest. The estate administrators contended that the partnership agreement was ambiguous.

The Minnesota court examined Arizona, Kentucky, and Wisconsin decisions involving the issue of whether the purchase price of a deceased partner's interest should be book value or fair market value. See *Mahan v. Mahan,* 107 Ariz. 517, 489 P.2d 1197 (1971); *Curtis v. Campbell,* 336 S.W.2d 355 (Ky.1960); *Schumann v. Samuels,* 31 Wis.2d 373, 142 N.W.2d 777 (1966). Each of the three State courts determined that the deceased partner's selling interest should be priced at the fair market value. The *Anderson* court concluded its analysis of these cases as follows:

"These opinions clearly demonstrate a judicial hostility to the use of book value as a measure of a partner's interest. We believe that the reason for this hostility is simply the well-recognized fact that book value does not reflect the true value of a partner's interest. Thus, it would be inequitable to require a partner to sell his interest in a partnership for a price which does not reflect its true value unless it is clear that the partner explicitly agreed to do so." 310 Minn. at 294-295, 246 N.W.2d at 48.

In *Anderson* the court found that the partnership agreement did not explicitly establish the book value as the selling price upon a partner's death. Therefore, the estate administrators were entitled to the fair market value of the deceased's interest from the surviving partners. The Minnesota court noted the adoption of the Uniform Partnership Act by that State and quoted Minn.St. 323.41. North Dakota also has adopted the Uniform Partnership Act. Section 45-09-14, N.D.C.C., which contains wording nearly identical to that of Minnesota, provides, in part:

"When any partner ... dies, and the business is continued ... without any settlement of accounts as between his estate and the person or partnership continuing the business, *unless otherwise agreed,* his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the

value of his interest ..." [Italics supplied.]

The Minnesota court concluded that unless the agreement *explicitly* establishes the buy-out price, the Uniform Partnership Act statutory provision that the price will be the actual value of the interest will prevail.

 Neither *Anderson* nor *In re Randall's Estate* varies the general rule. If the partnership agreement clearly and specifically states the price the surviving partners must pay for a deceased partner's interest, the agreement will be upheld in the absence of fraud. However, if the partnership agreement is ambiguous, the surviving partners must pay the fair market value for the interest. In the instant case the trial court concluded the 1979 Bohn Implement partnership agreement is ambiguous. Graydon needed to prove by clear and convincing evidence that he and Clyde had agreed to a buy-out price less than the fair market value. He did not do so. Because the partnership agreement in this case does not explicitly establish the value of Clyde's interest, pursuant to Section 45–09–14, N.D.C.C., Clyde's estate is entitled to fair market value as of the date of Clyde's death.

The trial court correctly determined Graydon Bohn must pay JoAnn Bohn one-half of the net fair market value, or $750,-000, if he elects to purchase Clyde's interest. The new terms of payment determined by the trial court, 15 percent down and the balance in equal installments over 20 years, are fair. The trial judge has the equitable authority to devise terms of payment when the terms in the agreement are deemed unconscionable.

██ In addition to Graydon's appeal, JoAnn cross-appealed claiming that Graydon did not provide adequate and timely notice of his intention to purchase Clyde's partnership interest. The partnership agreement required that the surviving partner serve notice in writing within three months after the death of the deceased partner stating that he is electing to purchase the deceased's interest. Graydon's attorney filed an election on June 12, 1980, within the three-month period. Although JoAnn argues that Graydon's attorney was not authorized by Graydon to make the election, the trial court correctly determined that the attorney was authorized and proper notice was given.

We deny Graydon's motion for remand and affirm the trial court's judgment awarding JoAnn the fair market value of Clyde's interest in the partnership.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., and A.C. BAKKEN, District Judge, concur.

BAKKEN, District Judge, sitting in place of PAULSON, J., disqualified.