Graydon J. BOHN, Sr., Plaintiff, Appellee, and Cross-Appellant,

v.

Mildred JOHNSON and Johnson, Milloy, Johnson & Stokes, Ltd., Defendants, Appellants, and Cross-Appellees.

Civ. No. 10718.

Supreme Court of North Dakota.

July 23, 1985.

Ernest I. Reveal (argued) and Kathleen A. Marron, of Robins, Zelle, Larson & Kaplan, Minneapolis, and Leland F. Hagen, of Lee Hagen & Associates, Fargo, for plaintiff, appellee, and cross-appellant.

Kermit Edward Bye (argued), Mart R. Vogel, and Pamela J. Hermes, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, and Johnson, Weis & Paulson, Rhinelander, Wis., for defendants, appellants, and cross-appellees.

VANDE WALLE, Justice.

Mildred Johnson and the law firm of Johnson, Milloy, Johnson & Stokes, Ltd. (hereinafter collectively referred to as Johnson), have appealed from a district court judgment entered upon a jury verdict in a legal malpractice action instituted by Graydon Bohn, Sr., who cross-appealed. We reverse the judgment and remand the case for a new trial.

In 1960, Harry Bohn and his sons, Graydon and Clyde, executed a partnership agreement to farm and do business as Bohn Implement Company. After Harry Bohn's death in 1968, Clyde, Graydon, and their mother continued the partnership. After their mother's death in 1979, Clyde and Graydon became sole partners. At Clyde's behest, Johnson prepared a new partnership agreement, which Clyde and Graydon signed on December 29, 1979. Paragraph 14 of the new agreement provided that on the death of either partner, the surviving partner had the right to either terminate and liquidate the partnership business or purchase the interest of the decedent, the purchase price of which was set forth in Paragraph 15:

"15. *Purchase Price.*

"A. The value of the partnership interest of Clyde M. Bohn or Graydon J. Bohn, Sr., for the purpose of this agreement, shall be:

"a. The capital amount of the decedent's interest as shown by the books of the partnership as of the end of the last fiscal year before his death, plus

"b. the decedent's share of profits, or less the decedent's share of losses, of the partnership computed to the last day of the month in which his death occurred less all withdrawals prior thereto during such fiscal year...."

The quoted portion of Paragraph 15 is virtually identical with Paragraph 11A of the 1960 partnership agreement.

After Clyde's death on April 18, 1980, Graydon notified Clyde's widow, JoAnn Bohn, that he elected to purchase Clyde's interest in the partnership and tendered an offer therefor. JoAnn rejected Graydon's offer and commenced an action on behalf of Clyde's estate. The trial court determined that Graydon must pay JoAnn one-half of the net fair market value of the partnership if he elected to purchase Clyde's interest. This court affirmed the trial court's judgment in *Bohn v. Bohn Implement Company*, 325 N.W.2d 281 (N.D.1982).

Graydon Bohn brought the instant legal malpractice action against Johnson for damages allegedly resulting from Johnson's negligence in drafting the 1979 partnership agreement. Trial of the action resulted in a jury verdict and judgment in favor of Bohn. This appeal raises numerous issues relating to: the trial court's rulings with respect to the prior case of

*Bohn v. Bohn Implement Company, supra;* the trial court's determination that the partnership agreement was ambiguous and its jury instructions regarding ambiguity; the trial court's determination and jury instructions regarding the partners' intent with respect to the buy-out provision; various other jury instructions; various evidentiary rulings; rulings on damages; the trial court's failure to direct a verdict in favor of Johnson; the trial court's refusal to take judicial notice of the ordinary meaning of the words "capital" and "amount" and its refusal to instruct thereon; the award of attorney fees in connection with requests for admissions; costs and disbursements; whether or not Johnson was deprived of a fair trial by the manner in which the trial judge conducted the trial and because of bias and prejudice on the part of the trial judge; and whether or not the cumulative effect of errors denied Johnson a fair trial.

Johnson seeks reversal of the judgment and a remand for entry of judgment in favor of Johnson or, in the alternative, a new trial before a different district judge and a change of venue. Bohn seeks affirmance of the judgment. Johnson and Bohn both seek modification of the costs and disbursements allowed.[1]

This court recently reiterated several principles relevant in legal malpractice actions with regard to the standard of care owed by an attorney, the determination of negligence *vel non,* and the effect of imperfect draftsmanship in *Martinson Bros. v. Hjellum,* 359 N.W.2d 865, 872–873 (N.D. 1985):

> "The standard of care to which an attorney is held in the performance of his professional services is that degree of skill, care, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in the State. *Sheets v. Letnes, Marshall & Fiedler, Ltd.,* 311 N.W.2d 175 (N.D.1981); *Feil v. Wishek,*

193 N.W.2d 218 (N.D.1971).... Thus in a legal malpractice action the plaintiff has the burden of proving by a preponderance of the evidence not only that his attorney was negligent, but that the negligence was the proximate cause of his damage. See *Feil, supra.*

> "This court has often said that issues of negligence and proximate cause are questions to be decided by the trier of fact unless the evidence is such that reasonable minds can draw but one conclusion. E.g., *Layman v. Braunschweigische Maschinenbauanstalt,* 343 N.W.2d 334 (N.D.1983).... [I]n the context of a legal malpractice action, whether or not an attorney has breached his professional duty is ordinarily a question of fact. *Sheets, supra....*

> . . . . .

> "Martinson first asserts that Hjellum was negligent in redrafting the December 1977 contract between Oakes and the Martinsons. He relies primarily on our statement in *Oakes Farming Ass'n, supra,* 318 N.W.2d [897] at 908 [N.D.1982] that 'the contract is, at best, confusing or ambiguous as to what was actually purchased by Martinson.' ...

> "A lawyer, without an express agreement, ' "is not a guarantor ... that the instruments he will draft will be held valid by the court of last resort." ' *Feil, supra,* 193 N.W.2d at 224 [quoting *McCullough v. Sullivan,* 102 N.J.L. 381, 384, 132 A. 102, 103 (1926)]. See also *Kirsch v. Duryea,* 21 Cal.3d 303, 146 Cal.Rptr. 218, 578 P.2d 935 (1978); *Dillard Smith Const. Co. v. Greene,* 337 So.2d 841 (Fla.Dist.Ct.App.1976). A successfully asserted claim of legal malpractice requires more than the fact, standing alone, that a trial or appellate court interpreted a document differently than the lawyer or his client assumed they

1. Bohn has filed a motion to strike a "special appendix" filed by Johnson. The special appendix relates to issues not requiring determination and therefore is immaterial to our disposition of

this case. Although the appendix is significant, it is the record, not the appendix, upon which we rely. See Rule 30, N.D.R.App.P.

would. *Denzer v. Rouse*, 48 Wis.2d 528, 180 N.W.2d 521 (1970)."

■ Johnson asserts that the trial court erred in admitting into evidence the judgment, liquidation order, and settlement agreement from the prior case of *Bohn v. Bohn Implement Company, supra.* We agree.

The judgment in *Bohn v. Bohn* provided in part:

"NOW, THEREFORE, IT IS OR-DERED AND ADJUDGED that the defendant, Graydon J. Bohn, Sr., has the option to purchase his deceased brother, Clyde Bohn's, partnership interest in the Bohn Implement Company, and the purchase price should be the equivalent of 50% of the net fair market value of the assets of the partnership as of April 18, 1980, and said value is 1.5 million dollars."

It also provided that if Graydon did not elect within 30 days to purchase Clyde's interest, the partnership should be liquidated.

The final order for liquidation in *Bohn v. Bohn* recited, among other things, that the judgment provided that Bohn could purchase the partnership assets by paying Clyde's estate $750,000 plus interest, that trial costs of $1,907 and appeal costs of $75 were taxed against Bohn, that a loan of $65,000 was obtained on June 4, 1982, to pay estate taxes and interest thereon due from Clyde's estate and:

"(F) That the Supreme Court of the State of North Dakota affirmed the Judgment in this case ..."

The liquidation order also ordered that the assets be liquidated by sale and distribution in kind and that Clyde's estate was entitled to the following:

"(A) Cash representing fifty percent (50%) of the Bohn Implement Company net profits for the years ended December 31, 1980 and December 31, 1981.

"(B) Cash representing interest on the sum of $750,000.00, at the rate of six percent (6%) per annum, from January 22, 1982, the date Judgment was entered, through June 3, 1982.

"(C) Cash representing interest on the sum of $685,000.00, at the rate of six percent (6%) per annum from June 4, 1982, the effective date of the loan from the Production Credit Association, through the date that this Order is signed.

"(D) Cash and property having a net value of $685,000.00."

The order also stated the value of each of the parcels of real property owned by the partnership and that the estate's share of the partnership's 1980 and 1981 profits was $15,480.50.

Also admitted into evidence was a "Settlement Agreement Upon the Liquidation of the Bohn Implement Company" by which Graydon and JoAnn Bohn "agreed upon the interpretation of the 'Final Order For Liquidation' and as to how the proceeds from sale of partnership assets and distribution of partnership property are to be made."

■ Bohn was entitled to introduce evidence relating to *Bohn v. Bohn* to show that JoAnn had rejected his offer for the purchase of Clyde's interest and brought suit, resulting in a judgment requiring Bohn to pay fair market value in order to purchase Clyde's interest. Beyond that, the documents relating to *Bohn v. Bohn* were inadmissible and prejudicial to Johnson. A party to litigation is generally not bound by a judgment in a previous action to which he was not a party and the judgment and evidence introduced in the previous action have no evidentiary value against him. See *Emmil v. Smith,* 62 N.D. 174, 242 N.W. 407 (1932); *Carlson v. Davis,* 45 N.D. 540, 178 N.W. 445 (1920); *Union National Bank v. Western Building Co.,* 44 N.D. 336, 175 N.W. 628 (1919); *Tierney v. Phoenix Ins. Co.,* 4 N.D. 565, 62 N.W. 642 (1895).

*Tierney v. Phoenix, supra,* involved an action on an insurance policy which excluded coverage for losses occurring after any change in the interest, title, or possession of the insured property. The insurance company proved that a mortgage on the

property had been foreclosed and the property sold and a deed issued to the purchaser before the loss, thus establishing a defense unless those proceedings were void. The plaintiff was permitted to introduce evidence of a judgment annulling the foreclosure proceedings in an action to which the insurance company was not a party. In holding the judgment annulling the foreclosure inadmissible, this court stated, 62 N.W. at 643:

"... Beyond the small circle which contains parties and privies, a judgment in personam is evidence only of the fact that such a judgment has been rendered. It cannot be used to prove any other fact which it establishes as between the parties to the judgment. 2 Black, Judgm. § 600. No further citation is necessary in support of a doctrine so elementary. The rule is salutary. Nay, it is indispensable to the administration of justice. The contrary doctrine would be subversive of the fundamental principle, recognized by all civilized nations, that every one is entitled to a hearing before being affected in his person or property by the judgment of a court....

"... Had the defendant in this action been heard in the other action on the various grounds on which the foreclosure was annulled, an entirely different judgment might have resulted.... The plaintiff in that case had a deep interest in setting aside the foreclosure.... The defendant, also, in that action may have had an interest in the annulment of the foreclosure if the judgment therein would be effectual to settle, as against the insurance company, the fact that the foreclosure was void...."

We said in *Emmil v. Smith, supra,* 242 N.W. at 408:

"[A] judgment binds only those (and their privies) who were directly interested in the action in which it was rendered and who actively and openly participated in the trial and conduct thereof. Accordingly, it is clear that neither of the defendants was concluded by the judgment in the former case and it has no evidentiary value as against them."

The rationale underlying the foregoing decisions is applicable to the documents relating to *Bohn v. Bohn* and to Johnson, who was not a party and had no direct interest or opportunity to participate in the trial of that action, in which both of "the parties admitted the partnership agreement is ambiguous." *Bohn v. Bohn Implement Co., supra,* 325 N.W.2d at 283. Johnson's liability, if any, "depended upon the facts shown by the evidence in this case, and not upon what might have been shown or found in some other case between different parties." *Union National Bank v. Western Building Co., supra,* 175 N.W. at 630.

Bohn relies on *McCullough v. Sullivan,* 132 A. 102 (N.J.1926), for the admissibility of the documents relating to *Bohn v. Bohn.* We are not persuaded of the wisdom of that portion of *McCullough v. Sullivan, supra,* which held admissible the determinations of other courts that the chattel mortgage involved in the former case, to which the defendant was not a party, was invalid.

■ Bohn also relies on *Feil v. Wishek,* 193 N.W.2d 218 (N.D.1971), for the admissibility of the documents relating to *Bohn v. Bohn* because the trial court in *Feil* had received in evidence an earlier bankruptcy court order even though the defendant was not a party to the earlier proceeding. In *Feil,* however, neither the correctness of the bankruptcy referee's order nor the admissibility of the order was an issue before this court. The authority of a decision is limited to the points actually considered and determined. See *F.W. Woolworth Co. v. Gray,* 77 N.D. 757, 46 N.W.2d 295 (1951), and *Darling & Co. v. Burchard,* 69 N.D. 212, 284 N.W. 856 (1939). The admissibility of the prior bankruptcy order not having been considered and determined in *Feil,* reliance thereon is misplaced.

We recognize that it may be necessary in other legal malpractice actions to create an exception to the general rule and admit judgments, evidence, and transcripts from former cases in which the defendant attorney was not a party, such as was done in

*Walker v. Bangs,* 92 Wash.2d 854, 601 P.2d 1279 (1979), and *Woodruff v. Tomlin,* 423 F.Supp. 1284 (W.D.Tenn.1976), *rev'd,* 593 F.2d 33 (6th Cir.1979), *reh'g en banc granted* May 24, 1979, *aff'd in part, rev'd in part, and remanded,* 616 F.2d 924 (6th Cir. *en banc* 1980), *cert. den.* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). Unlike the instant case, in those cases the subject of the legal malpractice action was the defendant attorney's conduct in the former action and the judgment, evidence, and transcript in the former action may have been not only the best, but perhaps the only, evidence upon which to make a determination of whether or not the attorney was negligent in handling the former litigation. In the instant case, however, it is not Johnson's conduct in former litigation that is in issue and decisions such as *Walker* and *Woodruff, supra,* are inapposite.

Bohn argues that:

"... the judgment, liquidation order and settlement agreement were *not* offered for the purpose of proving any of the facts upon which the judgment was based, *e.g.,* the fact that the term 'capital amount' had no generally accepted meaning. Instead they were offered to establish a causal link between defendants' negligence and plaintiff's damages."

The trial court instructed the jury:

"The purpose of having these documents in evidence is solely to inform you that a judgment was rendered, its date, terms and effect. The liquidation order and settlement or accounting is in evidence to show proximate cause as to damages and that damages may have occurred but may not be considered by you in ascertaining a fair market value amount of damages, if you do award any.... [T]he liquidation order and settlement, or accounting were ... received by the Court only to allow the Plaintiff to attempt to utilize the same as a step towards proving the alleged damages...."

 Bohn's argument and the instruction presume an act of negligence on the part of Johnson. The effect of this presumption, coupled with the testimony of one of Bohn's expert witnesses that "[t]here's a decision which holds that it is an ambiguous term, capital amount," and the recitation in the liquidation order that this court affirmed the judgment in *Bohn v. Bohn,* was to make it almost mandatory that the jury infer that judgment was entered against Bohn in *Bohn v. Bohn* because of Johnson's negligence in using "capital amount" and that as a result Bohn should now recover the damages indicated in the judgment, liquidation order, and settlement agreement.

"'In general, a judgment in another cause finding a fact now in issue is not admissible. The fact that another jury had theretofore, in another case, determined the very questions at issue in the present trial would have had a strong tendency to induce the jury in the subsequent case to reach the same conclusion, and would therefore have been very prejudicial.'"

*Allen v. Great Liberty Life Ins. Co.,* 522 S.W.2d 247, 250–251 (Tex.Civ.App.1975), quoting *Davis v. Zapata Petroleum Corp.,* 351 S.W.2d 916, 922 (Tex.Civ.App.1961). See also *Heath v. Board of Com'rs of Guilford County,* 40 N.C.App. 233, 252 S.E.2d 543 (1979).

The error in admitting the documents relating to *Bohn v. Bohn* and the prejudice flowing therefrom were compounded by the failure to allow Johnson the opportunity to introduce evidence to show that the judgment in *Bohn v. Bohn* resulted from matters other than ambiguity, if any, in the written 1979 partnership agreement or negligence, if any, on the part of Johnson. The erroneous admission of the documents relating to *Bohn v. Bohn* and the failure to allow Johnson to present countervailing evidence deprived Johnson of the opportunity to fairly address some of the major issues in the lawsuit and the judgment rendered must be reversed.

Although our determination with regard to the admissibility of documents relating to *Bohn v. Bohn* is dispositive of this ap-

peal, we deem it appropriate to consider the trial court's instructions on the effect of an ambiguity in a written partnership agreement because the issue is certain to arise upon remand.

The trial court determined as a matter of law that the written partnership agreement was ambiguous with regard to valuing the partnership assets for a buy-out and so instructed the jury. The court also instructed the jury:

"Since the Court has determined that the partnership agreement drafted by defendants is ambiguous and unclear regarding the manner in which the partnership's assets were to be valued in the event of a buy-out, the Court further instructs you that the partnership agreement did not explicitly establish the value of Clyde Bohn's interest in the partnership at the time of his death. Hence, the surviving partner, the Plaintiff, was required by law to pay fair market value for Clyde's interest, if he desired to exercise the option. This does not, of course, resolve, in any way, the issues of intent, or possible liability, but may have impact on damages, if any."

■ In our view, that instruction was not a correct statement of the law and improperly directed a verdict against Johnson, despite the limited disclaimer in the last sentence. It incorrectly stated that an ambiguity in a buy-out provision in a written partnership agreement results in a buy-out price of fair market value.

In *Sorlie v. Ness*, 323 N.W.2d 841, 844 (N.D.1982), we stated:

"The construction of a written contract to determine its legal effect is a question of law for the court to decide. *Metcalf v. Security International Ins. Co.*, 261 N.W.2d 795 (N.D.1978). The determination of whether or not a contract is ambiguous is also a question of law for the court to decide. *Schulz v. Hauck*, 312 N.W.2d 360 (N.D.1981); *Grove v. Charbonneau Buick-Pontiac, Inc.*, 240 N.W.2d 853 (N.D.1976). Pursuant to Section 9–07–04, N.D.C.C., the intention of the parties under a written contract is

to be ascertained from the writing alone if possible. If the parties' intentions can be ascertained from the writing alone, without reference to extrinsic evidence, then the interpretation of the contract is entirely a question of law, ... But, if the parties' intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier of fact. *Farmers Elevator Company v. David*, 234 N.W.2d 26 (N.D.1975); *Stetson v. Investors Oil, Inc.*, 140 N.W.2d 349 (N.D.1966)."

Thus, a determination that a written agreement is ambiguous and the parties' intentions cannot be determined from the writing alone does not end the inquiry as to the meaning of the agreement. A determination of ambiguity is but the starting point in the search for the parties' ambiguously expressed intentions, which are questions of fact to be determined with the aid of extrinsic evidence. After noting that "the parties admitted the partnership agreement is ambiguous," we said, in *Bohn v. Bohn Implement Co.*, 325 N.W.2d 281, 283 (N.D.1982):

"... The buy-out value cannot be ascertained from the agreement. Because of this ambiguity, we must look to other evidence to understand the agreement between Clyde and Graydon. When the intent of the parties cannot be determined from the agreement alone, the issue of the parties' intent is a question of fact."

We believe the quoted instruction reflects an unduly restrictive view of our decision in *Bohn, supra*. With regard to the validity of buy-out prices of less than fair market value, we said in *Bohn, supra*, 325 N.W.2d at 284:

"... We agree that partnership buy-out agreements may be valid when the interest is priced at less than actual value. However, the agreement must explicitly provide the price and terms in that situation." .

As to establishing a buy-out price of less than actual value, we said in *Bohn, supra,* 325 N.W.2d at 285:

"If the partnership agreement clearly and specifically states the price the surviving partners must pay for a deceased partner's interest, the agreement will be upheld in the absence of fraud. However, if the partnership agreement is ambiguous, the surviving partners must pay the fair market value for the interest. In the instant case the trial court concluded the 1979 Bohn Implement partnership agreement is ambiguous. *Graydon needed to prove by clear and convincing evidence that he and Clyde had agreed to a buy-out price less than the fair market value. He did not do so.* Because the partnership agreement in this case does not explicitly establish the value of Clyde's interest, pursuant to Section 45–09–14, N.D.C.C., Clyde's estate is entitled to fair market value as of the date of Clyde's death." [Emphasis added.]

Implicit in the foregoing statement is a determination that a buy-out price of less than fair market value need not be explicitly provided in a perfectly drafted written partnership agreement but may be established by clear and convincing extrinsic evidence. While the intent of the parties to a written agreement "is to be ascertained from the writing alone if possible" [§ 9–07–04, N.D.C.C.], when the parties' intent cannot be determined from the writing alone, we must look to other evidence to determine the factual question of the parties' intent. When a written agreement is ambiguous and the parties' intent cannot be ascertained from the writing alone, the parties' agreement consists of the written agreement, as explained by extrinsic evidence. An ambiguity in a written buy-out provision may be removed if the survivor is able to prove by clear and convincing extrinsic evidence that the parties had agreed to a buy-out price of less than fair market value.

█ We conclude that an intent to provide a buy-out price of less than fair mar-

ket value will be upheld if that intent is explicitly stated in a written partnership agreement or, if the written agreement is ambiguous, such an intent is proved by clear and convincing extrinsic evidence. Otherwise, pursuant to § 45–09–14, N.D. C.C., a deceased partner's estate is entitled to fair market value as of the date of death. *Bohn, supra.*

The elements of recoverable damages is another issue that is certain to arise at a new trial. The jury awarded Bohn damages for lost profits for the years 1980, 1981, and 1983 and for Bohn's loss of increased value of certain real property. Johnson asserts that these damages are duplicative.

█ Sections 32–03–01 and 32–03–20, N.D.C.C., which contemplate full compensation for any detriment suffered and that compensable detriment must have been proximately caused by the breach of an obligation, provide:

"*32–03–01. Damages for any injury.* —Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages."

"*32–03–20. Measure of damages for tort.*—For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by law, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

█ Presumably, the ability of the partnership assets to generate profits was reflected in the value of the assets at the time of Clyde's death. A considerable amount of time has, however, elapsed since Clyde's death and there is no doubt that Graydon's opportunity for the receipt of income the assets could have produced between the time of Clyde's death and the entry of judgment has been lost. If Johnson was negligent and the negligence proximately caused detriment to Bohn, he should be fully compensated for this ele-

ment of damage, whether by way of recovery of lost profits or recovery of interest.

██ As to loss of increased value of one tract of land, it appears that this was a quarter-section of land converted from pasture land to cropland in 1982 by a tenant who had rented the land for a number of years before and after Clyde's death and who later purchased the land. Presumably, the value of that land at the time of Clyde's death reflected its potential for conversion to cropland. Recovery of the difference between fair market value at the time of Clyde's death and the price which Bohn is able to establish that he should have been required to pay for the land is sufficient. Recovery of an amount by which the land's present fair market value or its actual sale price exceeds its fair market value as of the date of Clyde's death would be a recovery of duplicative damages.

Because we have determined that the judgment, for reasons already stated, must be reversed and the case remanded for a new trial, we need not address the other issues raised, which "do not involve questions of law certain to arise on remand" [*Lippert v. Lippert*, 353 N.W.2d 333, 336 (N.D.1984)], and are not necessary to the determination of this case. "Questions, the answers to which are not necessary to the determination of a case, need not be considered." Syllabus 3, *Hospital Services, Inc. v. Brooks*, 229 N.W.2d 69 (N.D.1975).

For the reasons stated, the judgment is reversed, and the case is remanded for a new trial before a judge to be designated by this court at the time the mandate is issued.[2]

ERICKSTAD, C.J., GIERKE, J., and NEUMANN and SCHMALENBERGER, District Judges, concur.

NEUMANN and SCHMALENBERGER, District Judges, sitting in place of LEVINE and MESCHKE, JJ., disqualified.

**2.** While it was unnecessary to consider the issues raised with regard to the trial judge's conduct in presiding over the trial in this case, because of the manner in which those issues were raised we believe it is advisable that a different judge preside over the new trial. See *Blomquist v. Clague*, 290 N.W.2d 235 (N.D.1980). Johnson's request for a change of venue should appropriately be addressed to the judge to whom this case is reassigned for new trial. We do not have before us a sufficient record to make a determination on this matter. See *Haugo v. Haaland*, 349 N.W.2d 25 (N.D.1984). Johnson will have an opportunity on remand to amplify the record in support of the request.