RENDERED:  MARCH 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0362-MR

JAMES R. POSTON, JR. AND AQS
AUTOMOTIVE QUALITY
CONTROL, LLC                                                          APPELLANTS

v.          APPEAL FROM KENTON CIRCUIT COURT
            HONORABLE KATHLEEN S. LAPE, JUDGE
            ACTION NO. 17-CI-00464

THOMAS WELCH AND JOHN 3:16
LLC F/N/A AUTOMOTIVE QUALITY
SUPPORT, LLC                                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND JONES, JUDGES.

GOODWINE, JUDGE:  Appellants James R. Poston, Jr. ("Poston") and AQS

Automotive Quality Control, LLC ("Control") appeal from the Kenton Circuit

Court's March 12, 2021, order granting summary judgment in favor of Appellees

Thomas Welch ("Welch") and John 3:16 LLC F/N/A Automotive Quality Support, LLC ("Support").[1]  After careful review, finding no error, we affirm.

This appeal arises out of Poston's failure to pay Welch $130,000 owed under a promissory note.  On December 14, 2012, Control, owned by Poston, and Support, owned by Welch, executed an asset purchase agreement.  Under the purchase agreement, Control purchased an auto parts sorting business from Support for a total purchase price of $750,000.  Control agreed to pay $150,000 at closing and pay the remaining $600,000 under the terms of the promissory note.  The note required Control to make forty-seven monthly payments of $10,000 and a single balloon payment of $130,000 due on January 1, 2017.  Poston executed a personal guaranty of the $130,000 balloon payment.

The purchase agreement contained an indemnity clause, which provides:

> Seller [Support] and Member [Welch], jointly and severally, covenant and agree to defend, indemnify and hold harmless Purchaser [Control] and its officers, directors, members and employees (collectively, the "Purchaser Indemnitees") from and against, and pay or reimburse the Purchaser Indemnitees for, any and all claims, demands, liabilities, strict liabilities, obligations, losses, fines, costs, expenses, royalties, litigation, deficiencies or damages (whether absolute, accrued, conditional or otherwise and whether or not resulting from third party claims), including interest and penalties

---

[1] Support changed its name to John 3:16 LLC shortly after the execution of the note and guaranty.  Throughout the proceedings, most documents refer to the business as Support.

with respect thereto and out of pocket expenses and reasonable attorneys' and accountants' fees and expenses incurred in the investigation or defense of any of the same or in asserting, preserving or enforcing any of their respective rights hereunder resulting from or arising out of:

(i) any breach of any warranty, covenant, obligation or agreement of Seller or Member in this Agreement or in any schedule, document or agreement furnished or to be furnished by Seller or Member under this Agreement;

(ii) the ownership and operation of the Business prior to the Closing or arising in connection with any liabilities of Seller or Member; and

(iii) any liens, claims, encumbrances or similar restrictions encumbering the Assets as of the Closing Date or the failure to deliver the Assets to Purchaser clear of all liens, claims and encumbrances of any kind or nature.

All obligations and covenants of Seller and Member contained in this Agreement shall survive the execution and delivery of this Agreement for a period of two (2) years after the Closing Date. Upon thirty (30) days prior written notice specifying the basis for the claimed indemnification, Purchaser shall be entitled to offset against the Promissory Note executed in connection herewith any amounts owed by Seller or Member to Purchaser pursuant to the terms of this Agreement. Notwithstanding the foregoing indemnification by Seller and Member to Purchaser Indemnitees, nothing herein shall be deemed or construed to be an acceptance, assumption or guaranty of any liability or obligation of the Seller by the Members as to any other person or entity other than the Purchaser Indemnitees. Notwithstanding any provision herein, under no circumstances shall the indemnification

> obligations of Seller and Member, jointly and severally, to Purchaser Indemnitees pursuant to this Section exceed the Purchase Price.

Record ("R.") at 36. Additionally, the note provides the following regarding indemnification:

> Upon thirty (30) days prior written notice specifying the basis of the claim for indemnification, Maker shall be entitled to offset against principal or interest due hereunder any amounts owed by Holder to Maker under that certain Asset Purchase Agreement executed in connection herewith. This Note is subject to the terms set forth in that certain Security Agreement dated of even date herewith executed by Maker and Holder.

R. at 4.

Control and Welch also executed a consulting agreement. Welch agreed "to make himself available at reasonable times during the Term . . . to assist in the transition of the Business and customer accounts from [Support] to [Control] and to perform such other duties as are assigned to him from time to time by supervisory employees of [Control] in furtherance of such transition." R. at 186-87. The "Term" of the consulting agreement was eighteen months. For the first three months, Welch was to be available for "up to forty (40) hours per week, as [Control] may determine, during normal business hours[.]" R. at 187. For the remaining fifteen months, Welch was to be available by phone "for up to ten (10) hours per week[.]" *Id.* In the event Control had not hired a general manager "by the end of the initial three (3) month period, [Control] may choose to retain

-4-

[Welch's] in person services for up to thirty (30) hours per week for an additional six (6) months, provided it compensates [Welch] at the rate of thirty dollars ($30.00) per hour for such services[.]" *Id.*

After closing, Control and Poston requested Welch's assistance in locating a new general manager or "president" for Control. In late January or early February 2013 (within the initial three-month consulting period), Control hired Alan Stelzer ("Stelzer") to serve as president of Control. For a month following Stelzer's hire, Welch shared office space with him, and then Welch moved to Florida.

Control became dissatisfied with Stelzer's performance as president. In October 2013, Control terminated Stelzer after his arrest for public urination and DUI. Nearly two years later, Control stopped making $10,000 monthly payments on the note in July 2015 and went out of business about six months later. Although Poston blames Stelzer for costing Control its largest customer and for Control's financial failure, Control stayed in business for two years following Stelzer's termination.

In May 2016, Support assigned the note and Poston's guaranty to Welch via an allonge. Welch remains the holder of the note.

Control and Poston failed to make the balloon payment on January 1, 2017, after prematurely terminating monthly payments in 2015. Poston refused Welch's demands for payment on the guaranty.

On March 17, 2017, Welch filed a complaint against Poston in the Kenton Circuit Court. On May 1, 2017, Welch filed a motion to dismiss the complaint, which the circuit court denied on October 23, 2018. The circuit court found Welch was the holder of the note and had standing to enforce the guaranty against Poston via the allonge.

On November 2, 2018, Poston filed an answer and counterclaim. On May 6, 2019, the circuit court granted Control permission to intervene in the suit, and Poston brought in Support by a third-party complaint. Welch and Support moved to dismiss Poston's counterclaim and third-party claims against Support for breaching the consulting agreement.

Welch moved for summary judgment on his claim on the guaranty and Appellants' claims. Poston moved for summary judgment on his breach of contract claim. On March 12, 2021, the circuit court granted Welch's motion for summary judgment awarding him $130,000 plus interest at the statutory rate from January 1, 2017 until payment. The court disposed of all other pending dispositive motions and made the order final and appealable. This appeal followed.

On appeal Poston argues the circuit court erred in: (1) granting summary judgment in favor of Welch because Welch breached the consulting agreement first; (2) awarding Welch interest at the legal rate; and (3) rejecting his "circuitry of indemnity" defense. We review a circuit court's grant of summary judgment *de novo*. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370-71 (Ky. 2010). Under *de novo* review, we owe no deference to the circuit court's application of the law to the established facts. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004).

First, Poston argues the circuit court erred in granting summary judgment in favor of Welch because Welch breached the consulting agreement before Poston defaulted on the balloon payment. Welch argues, under the plain language of the consulting agreement, Welch did not warrant or guarantee Stelzer's performance. We interpret a contract "by looking solely to the four corners of the agreement. Unambiguous terms contained within the contract are interpreted in accordance with their ordinary meaning, without resort to extrinsic evidence." *Smith v. Crimson Ridge Development, LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013) (internal quotation marks and citations omitted).

Under the consulting agreement, Welch agreed to work as a consultant for Poston during the transition of the business under the following terms:

> Consultant agrees to make himself available at reasonable times during the Term as set forth in Section 1 above to assist in the transition of the Business and customer accounts from Seller to AQS and to perform such other duties as are assigned to him from time to time by supervisory employees of AQS in furtherance of such transition. Consultant agrees to devote so much of Consultant's time and energy in the performance of the services hereunder as Consultant and AQS deem advisable in order to satisfactorily perform Consultant's duties and obligations hereunder, subject to the limitations provided in Section 1 above.

R. at 187-88.

Poston argues the consulting agreement required Welch to perform his duties to Poston's good faith subjective satisfaction on behalf of Control, and Welch's deposition testimony supports his argument that Welch did not perform to his satisfaction. He asserts that within a few months of hiring Stelzer, it became apparent that he was an unsatisfactory president due to his personal and professional misbehavior.

Our Supreme Court has defined "satisfaction" as "'the fulfillment of a need or want.' When the phrase 'satisfactory to Buyer' is read in conjunction with the ordinary meaning of the word 'satisfactory,' the contract clearly requires that the buyer's needs or wants in relation to the [contract] be satisfied." *Crimson Ridge Development*, 410 S.W.3d at 621 (quoting MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1035 (10th ed. 2002)).

Although Poston disagrees, the circuit court found, "Obviously, Poston was satisfied with Welch's recommendation when he interviewed and ultimately hired Stelzer." R. at 497. The circuit court noted, "More importantly, the Personal Guaranty was not made contingent upon the subjective satisfaction of Welch's performance under the Consulting Agreement." R. at 498. Based on the plain, unambiguous language of the consulting agreement, Welch agreed to work for Control as a consultant as part of the purchase price and perform duties as assigned. One of his duties was to help Control identify a general manager. Nothing in the agreement certified that Welch was liable for the success or failure of the new general manager. Although Stelzer ultimately was not a good fit for the business, nothing in the record indicates any hesitation on Poston's part in accepting Welch's recommendation of hiring Stelzer as president. Poston, as the business owner, was solely responsible for the success or failure of the business and should have done his due diligence before hiring Stelzer. Thus, we agree with the circuit court that Welch was not responsible for the viability of the business under the plain language of the consulting agreement and Poston's personal guaranty.

Second, Poston argues the circuit court erred in awarding Welch interest at the legal rate because his guaranty set forth no interest rate for nonpayment of the $130,000 balloon payment. Welch argues Kentucky law

mandates the award of prejudgment interest absent an agreement or equitable reason not to. "The longstanding rule in this state is that prejudgment interest is awarded as a matter of right on a liquidated demand[.]" *Hall v. Rowe*, 439 S.W.3d 183, 188 (Ky. App. 2014) (quoting *3D Enters. Contracting Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)). "[E]quity and justice demand that one who uses money or property of another . . . should at least pay interest for its use in the absence of some agreement to the contrary." *University of Louisville v. RAM Engineering & Const., Inc.*, 199 S.W.3d 746, 748 (Ky. App. 2005) (quoting *Curtis v. Campbell*, 336 S.W.2d 355, 361 (Ky. 1960)). The legal interest rate for contracts is "eight percent (8%) per annum" unless the parties agree otherwise, and when a contract does not specify an interest rate the payee "shall be entitled to recover interest after default and until judgment at the legal rate of interest." Kentucky Revised Statutes ("KRS") 360.010.

Here, the note provides, "No amounts owed hereunder shall bear interest unless [Control] does not make a payment owed hereunder within thirty (30) days of the due date in which case such past due amount shall bear interest at the rate of eight percent (8%) per annum until paid." R. at 4. Poston's guaranty on the signature page of the note states the guaranty relates only to the $130,000 balloon payment, and Poston's liability under the guaranty "shall under no circumstances exceed $130,000." *Id.*

-10-

Poston argues because the guaranty purports to cap his liability at $130,000, no prejudgment interest may be assessed. However, the guaranty does not specify a rate of interest, nor does it explicitly exclude accrual of interest in the event of nonpayment. Although the guaranty limits Poston's liability to $130,000 under the guaranty, the prejudgment interest was awarded under Kentucky statute. Had the parties intended for no interest to accrue in the event Poston did not make the balloon payment, they could have excluded an award of prejudgment interest in the guaranty. As the guaranty did not impose an interest rate, the circuit court correctly followed KRS 360.010(4) in awarding 8% prejudgment interest. This amount is also consistent with the 8% interest rate included in the note.

Finally, Poston argues the circuit court erred in rejecting his "circuity of action" or indemnification defense. Poston argues the purchase agreement indemnified him from owing Welch the $130,000 balloon payment. Welch argues the parties clearly intended for the note and guaranty to be enforceable, and to hold otherwise would be absurd. The circuit court found Poston's interpretation of the purchase agreement would render the note and guaranty meaningless.

It is well-settled in Kentucky that "[a] writing is interpreted as a whole and all writings that are part of the same transaction are interpreted together." *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky. 1974). The purchase agreement contains an indemnification clause, which holds harmless Control "and

its officers, directors, members, and employees" for any breach of the purchase agreement or "any schedule, document or agreement furnished or to be furnished by Seller or Member under this Agreement." R. at 36. When Poston executed the note and guaranty, he agreed to make a $130,000 balloon payment. The note also included provisions for procedures in the event Poston and Control failed to make payments under the note.

Based on our reading of the purchase agreement, note, and guaranty, it is illogical to read the indemnification clause in the purchase agreement as holding Poston harmless for failure to make the balloon payment. Clearly, the parties intended Poston to pay the purchase price in exchange for the business. We agree with the circuit court that holding otherwise would be absurd.

For the foregoing reasons, we affirm the judgment of the Kenton Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher Markus
Crestview Hills, Kentucky

Kent Seifried
Ft. Mitchell, Kentucky

BRIEF FOR APPELLEE:

Susan M. Argo
Thomas A. Prewitt
Darren W. Ford
Ft. Mitchell, Kentucky